Donald J. Sullivan, J.
This is an action upon a $4,000 benefit certificate issued by the defendant association to the deceased, Frank D. King, the stepfather of the plaintiff, Dorothy Began. She sues in her own right as beneficiary to recover the proceeds of an accident insurance policy. It was tried before the court without a jury.
The essential facts are as follows: On June 4,1953, the defendant, the United Federation of Postal Clerks Benefit Association, s/h/a, National Transport Association, Inc., a fraternal benefit association organized under the laws of the State of New Hampshire to provide accident insurance to certain classes of Federal employees, issued a certificate of membership, No. 35638, in the beneficiary department of its association in the amount of $4,000 to Frank D. King, then a member of the New York branch of the association. It entitled him while living to participate in the benefits of the benefit fund upon the happening of various bodily injuries sustained by him through external violent and accidental means not the result of his own vicious or intemperate conduct which should wholly and continuously disable him from following the occupation of a Postal Transportation Clerk in the Postal Transportation Service of the United States.
Paragraph numbered 4 of the certificate covered payment of “ death benefits ”. The wording used therein and which is determinative of this case reads as follows:
*903 “If death shall result from such injuries alone within one year from the date of the injury, the Association will pay $4000, ... to Dorothy E. Began, Step-daughter.
11 Provided, however, no benefit or sum whatsoever shall be payable in any case whatsoever unless the accident alone results in producing visible external marks of injury or violence suffered by the body of the member, nor unless the death or disability results wholly from the injury, and within the time above specified. Nor shall any benefit be paid where death or disability results from voluntarily inflicted injuries, by the member, be he sane or insane; nor from poison or other injurious matter taken or administered accidentally or otherwise; nor as the result of any surgical operation.
“Accidental death shall be construed to be either sudden, violent death from external violent and accidental means, resulting directly from such accidental means, independently and exclusively of any other causes, and not the direct or indirect result of the member’s own vicious or unlawful conduct; or death within one year, as the sole result of accidental means alone. There shall be no liability whatever when disease, defect or bodily infirmity is a contributing cause of death.”
On March 31, 1962, while the contract was in force and effect, Frank D. King died. He was then 80 years of age and a patient at the Veterans’ Administration Hospital in Bath, New York. He had been confined thereto for approximately 22 months prior to his death. Following notification of death and submission of proof thereof by plaintiff and a refusal by defendant to pay the benefit, the instant action was commenced. The defendant at trial conceded the existence of the contract and the status of plaintiff as beneficiary thereunder. It denied and contested, however, the accidental death as that term is defined in the policy.
Thus the sole issue tried was whether or not the insured’s death was caused by an accident within the meaning of the policy.
Plaintiff’s proof consisted of two parts. First, a properly certified copy of a certificate of death issued by the Office of Vital Becords of the New York State Department of Health. It was offered in evidence by plaintiff to establish the cause of death of Frank D. King. In view of defendant’s objection to its receipt in evidence for such purpose, it was accepted by the court solely to establish the fact of death. Decision was reserved on its admissibility to show the cause of death. The certificate contained the following significant information relative to the *904 cause of death in that part of the certificate entitled ‘ ‘ Medical Certification ”:

Second, the plaintiff offered the testimony of Daniel H. Eichner, a medical doctor of some 36 years’ practice, who estimated treating about a thousand cases of cerebral arteriosclerosis during his career. He did not testify to treating the decedent during his lifetime or attending him at the time of his death or thereafter. A number of hypothetical questions were asked *905 him, over objection of defendant on the ground that no foundation was laid for the questions, since the defendant claimed they were predicated on facts not in evidence, particularly in view of the defendant’s position as to the inadmissibility of the death certificate to establish cause of death. The questions hereinafter set forth were permitted to be answered, subject to a reservation of decision by the court as to their ultimate admissibility.
“ Q. Doctor, would you state your opinion as to whether the presence of a sock in a man’s pharynx and suffocation because of its being there and death ensuing therefrom would be considered a death by external and violent means ?
“ A. The answer to the question is Yes.
‘ ‘ Q. On what do you base that, doctor ?
“ A. I base my answer on the question as stated, that a sock being a foreign body in a person’s pharynx is an external and violent force and could suffocate a patient.
“Q. Would the presence of a foreign object such as a sock in the pharynx of a much younger man not necessarily suffering from cerebral arteriosclerosis be capable of causing death?
‘ ‘ A. The answer is Yes.
“ Q. Doctor, would you say that the presence of a sock in a person’s pharynx would be a visible external mark of injury on such a person’s body?
“ A. The answer is Yes.”
Following this the plaintiff rested her case. The defendant rested without offering any proof. It thereafter moved to dismiss on the ground that plaintiff failed to prove a case. Decision was reserved to await submission of memoranda which the court acknowledges and for which he thanks counsel for the scholarly excellence of their labors.
A threshold and crucial issue which the court must decide is whether or not a properly certified copy of a record of a death — a death certificate — is admissible to establish the cause of death. If it is not admissible for this purpose, plaintiff may not recover because of failure of proof. If it is admissible — and I believe that it is for the reasons hereinafter stated — plaintiff has overcome the first and most formidable obstacle to obtain judgment.
It will be observed from a review of the many cases in this jurisdiction touching on this question that whether or not a certificate.of death may be admitted to show the cause of death, as distinct from establishing the fact of death, is dependent upon the facts peculiar to the particular case. What may at first impression seem like a conflict in views and what may in *906 the case of several decisions of our Court of Appeals seem like a definitive rule of law on the question, may not in reality be such. Bather, it will be seen that this is attributable to the differences in the facts involved or the particular purpose for which, or the particular party by whom, the certificate was sought to be introduced.
If we first consider what in essence is the nature of the type of facts found in such certificates that a party usually wishes to place in evidence, we can better understand the underlying reasons for the various decisions, as well as the significance of the statutes set forth herein bearing on the question.
Such facts are invaribly medical ones. They are facts disclosed by the deceased to a physician or ascertained by the physician by observation or examination. Facts of this variety are not hearsay. They may be testified to directly by the physician, subject of course to the privileged communication rule. When recorded on documents, such as death certificates, they are still subject to the privileged communication rule, for this applies equally to documentary proof as well as testimonial proof. As recorded facts they are further subject to the hearsay rule, if they are offered in evidence via the medium of the document.
Summarizing therefore, we see that if the death certificate is inadmissible in a given case to establish the cause of death, it is because of the rule of privileged communication (which prevents disclosure of facts learned by a physician from a patient for the purpose of treatment) or because of the hearsay rule. The former rule, however, may be waived in an appropriate case (CPLR 4504; Matter of Monroe, 270 App. Div. 1039) and the latter rule is profoundly affected by various statutes (Public Health Law, § 4103). In addition, it has been held that the facts disclosed on an autopsy are not subject to the privilege rule, since there is no confidential relationship between the autopsy surgeon and a deceased. (Walsh v. Beckman, 29 Misc 2d 591; People v. Preston, 13 Misc 2d 802.)
The statutes affecting the question are:
Section 4103 of the Public Health Law provides in pertinent part:
“ 2. Any copy of the record of a birth or of a death or any certificate of registration of birth or any certification of birth, when properly certified by the local registrar, shall be prima facie evidence of the facts therein stated in all courts and places and in all actions, proceedings, or applications, judicial, administrative or otherwise, and any such certificate of registration of birth or any such certification of birth shall be accepted with the *907 same force and effect with respect to the facts therein stated! as the original certificate of birth or a certified copy thereof.
‘‘ 3. Any copy of the record of a birth or death or any certification of birth, when properly certified by the commissioner or persons authorized to act for him shall be prima facie evidence in all courts and places of the facts therein stated.” (Italics added.)
The leading cases cited for the inadmissibility of the death certificate are Buffalo Loan, Trust & Safe Deposit Co. v. Knights Templar & Masonic Mut. Aid Assn. (126 N. Y. 450); Davis v. Supreme Lodge, Knights of Honor (165 N. Y. 159); Beglin v. Metropolitan Life Ins. Co. (173 N. Y. 374). In each, a death certificate was sought to be introduced by the defendant to show the cause of death of a predeceased relative and establish thereby a breach of a condition precedent or breach of warranty of the underlying contract of insurance and thus avoid payment. In each, the Court of Appeals held the certificate inadmissible, even in the face of statutes similar to the present section 4103 of the Public Health Law. The principal basis of the holding in each case was that the introduction of the death certificate by the particular party would constitute a violation of a privileged communication between patient and physician then regulated by section 834 of the Code of Civil Procedure. These cases are frequently cited for the proposition that a death certificate may not be introduced as proof of the cause of death in litigation between private parties. It is submitted, however, that such is the law of those cases only and not a general statement of law for all cases. The proper explanation of these cases is found in Flynn v. Metropolitan Life Ins. Co. (252 App. Div. 78), wherein the First Department held that a death certificate was inadmissible to show the cause of death, not because there existed such a rule of law, but rather because the certificate had not been relied upon and adopted by the plaintiff as part of the proof of death. The obvious import being that the plaintiff was capable of waiving the privilege, and if he did so the certificate would be admitted for that purpose. That the privilege may be thus waived is obvious and has been codified in existing CPLR 4504. Here, pursuant to CPLR 4504 (subd. [c], par. 1) waiver of the physician-patient privilege may be executed by the plaintiff herein. She is ‘ ‘ the next of kin of the decedent ’ ’.
It is also interesting to note that in two of the three cases cited, Davis and Beglin {supra) the death certificates were not offered to show the cause of death of the assured covered by the policy in question, but rather to show the cause of death *908 of a relative of the assured and establish thereby a breach of warranty of the terms of the contract. In the Buffalo Loan case while the certificate pertained to the assured, it had been submitted by the guardian of the infant plaintiff as part of the proof of death and as such might have been binding as an admission against interest, but the court declined to hold that the guardian’s act in this instance was binding upon the ward.
It is also noteworthy that these cases involved policies of life insurance only, whereas we are here concerned with a policy of accident insurance or accident-life insurance. Unlike actions on life insurance policies, where the plaintiff need only prove the death, leaving to the insurer to prove any matter which tends to exclude coverage, the plaintiff in- an action upon an accident policy or accident feature of a life insurance policy, has the burden of proving more than the mere death of the insured, but must, by the fair preponderance of the credible evidence, show not only that the insured died but that the death, or the injuries which causes it, was of the kind insured against by the policy, that is, that the injuries or the resulting death were caused by accidental means.
Since this burden can in most instances involving accident policies only be met by medical proof, it would be an absurdity to hold that plaintiff is estopped from using medical proof on the one hand by the privilege rule or on the other hand by the hearsay rule. We have seen from the cases that the certificate has been declared inadmissible to show cause of death when sought to be introduced by a party not authorized to waive the privilege. We do not have that problem in the instant case since the plaintiff may waive the privilege (CPLR 4504). The hearsay objection is overcome by the statute which was enacted for the very purpose of providing an exception to the hearsay rule. Accordingly, I hold on the basis of the foregoing that the death certificate is admissible to establish the cause of death and all decisions heretofore reserved on the trial of the action are decided in favor of plaintiff. The death certificate in the case at bar was offered by plaintiff as part of her proof of death and hence became admissible to establish the cause of death, if a legally admissible factual cause, as distinct from hearsay matter often found in such certificates, is actually set forth therein. I find that such certificate in the ‘ ‘ medical certification ” part outlined above contains facts directly ascertained by the maker in attending the deceased at the actual time of his demise, as well as additional facts ascertained by autopsy.
*909 Further in Scott v. Empire State Degree of Honor (204 App. Div. 530) the appellate court stated that the trial court properly received into evidence the certificate of death and that the certificate was presumptive evidence of the facts stated therein, citing the predecessor to the present section 4103 of the Public Health Law.
In Brownrigg v. Boston & Albany R. R. Co. (8 A D 2d 140, 142) the Appellate Division of this Department stated: “A death certificate is admissible in this State as prima facie evidence of the fact therein stated. (Public Health Law, § 4103 * * * ).” (To the same effect see Gioia v. State of New York, 22 A D 2d 181, 184.)
Defendant contends, however, that if the certificate is admissible to show the cause of death, it is equally admissible to establish other facts contained therein. While I do not quarrel with this proposition, it is subject to the caveat heretofore stated that such facts must be ones directly ascertained by the maker and of such a nature that a court is justified in accepting them. Defendant claims that such facts appear in the certificate where it is indicated that cerebral arteriosclerosis was a contributing cause of death and such facts defeat plaintiff’s claim since an accident was not the sole cause. A ready answer occurs to this point. First, the finding of cerebral arteriosclerosis, which undoubtedly was ascertained as a result of autopsy which the certificate indicates was performed, appears on a part of the certificate not concerned with the “ immediate cause of death ”, but in a section numbered Part II and labeled: “ Other significant conditions contributing to Death but not related to the terminal condition given in Part 1(a) ”. This secondary finding of “ cerebral arteriosclerosis ”, which I hold equally admissible, does not, however, militate against a conclusion that the sole cause of death (as we understand a sole cause in the context of this ease) was “ suffocation from a foreign body in the pharynx”. It frequently happens that accident and disease are both present in eases arising under accident insurance policies, and the question arises as to whether death in such cases is caused by the accident or disease. The courts are agreed that, in the absence of any provision in the policy specifically controlling the matter, whether death is deemed caused by accident alone depends upon the factor of proximate cause. It follows from this general principle that the mere fact that the insured is suffering from a pre-existing disease or infirmity at the time of an accident does not, of itself, preclude recovery under the policy, and if the pre-exist *910 ing disease or infirmity of the insured has no causal connection with the harm suffered as a result of the accident and in no way produces the death or disability, or if the accidental injury is of such a nature as to cause death or disability solely and independently of the disease or infirmity, liability exists. (Henehan v. John Hancock Mut. Life Ins. Co., 260 App. Div. 892; cf. Silverstein v. Metropolitan Life Ins. Co. 254 N. Y. 81; 30 N. Y. Jur., Insurance, §§ 1114-1115.)
What was plaintiff required to prove in the instant case? Since her status as beneficiary and the existence of the contract were conceded, and since the death certificate was admissible to prove at the very least the fact of death, and since I find that the certificate is admissible to show the cause of death, her remaining burden was controlled by the policy. Simply stated she had to establish:
1. Death by accident alone within one year,
2. producing visible external marks of injury suffered by the body of the member,
3. not voluntarily inflicted,
4. nor from poison or other injurious matter taken or administered accidentally or otherwise.
5. nor as the result of a surgical operation.
These conditions have been satisfactorily established by the proof adduced via the certificate and the testimony of plaintiff’s witness, Dr. Eichner, as well as the following :
The words “ accident ” and “ accidental ” when used in an insurance contract are to be construed and considered according to the ordinary understanding and common usage and speech of people generally (Berkowitz v. New York Life Ins. Co., 256 App. Div. 324). Under New York law there is no distinction made between death occurring by accidental means and accidental death nor between accidental means and accidental results. (Mansbacher v. Prudential Ins. Co. of America, 273 N. Y. 140.) The test to be applied by the courts as to the meaning of the term “accident ” must be that of the average man. The one that is applied in the common speech of men. (Rosenthal v. Mutual Life Ins. Co. of N. Y., 7 A D 2d 182.) In considering the meaning of the words “ accident ” and “ accidental death”, the courts have emphasized the necessity of ascribing to them their plain and everyday usage by the ordinary man. Thus — “ His death was accidental, and, as we use these words in common parlance, we would speak of it as an accidental death. Contracts are to be interpreted in the light of the language which we commonly use and understand; in other words, our common speech ”. (Rosenthal, supra, p. 188.)
*911 The common man being given the facts in the instant case would have no hesitancy in categorizing it as an accident. Adding strength to this conclusion is the fact that the physician attending the deceased and the plaintiff’s medical witness, called the occurrence an accident.
It is frequently provided in accident policies that there shall be no recovery for any injury of which there is no external and visible sign. The purpose of such a provision is to protect the insurer against sham claims barring the insured from recovering for alleged injuries of which there is no proof except his own assertion (30 N. Y. Jur., Insurance, § 1103 and cases cited therein). Such a provision should have a reasonable and practical construction, and where ambiguous, it will be construed in favor of the insured. In determining what is a visible mark or injury on a body, it has been held that the evidence of the injury must be external and objective, but must not necessarily be visible to the eye, it being sufficient if its existence may be ascertained by observation and examination. In other words, the visible mark or sign of injury need not be a bruise, contusion, laceration, broken limb, or scar, but may be any visible evidence or external sign of a positive injury. It is sufficient if the mark can be perceived by any means, whether or not visible to the eye. For example, a mark is visible in that it is perceptible when its existence can be determined by examination by the hand or by examination of the interior of the body by X ray. The visible mark of injury suffered by the body of the deceased was the foreign object, the sock, found in his pharynx. :
Where the death is shown to result from external violence, as here, there is a presumption that it was due to accidental means, so as to support a recovery in the absence of affirmative proof to the contrary by the insurer since there is a presumption in the law against suicide.
Finally, the policy denies coverage where death results “from poison or other injurious matter taken or administered accidentally or otherwise ”. This clause like other exclusionary provisions is to be strictly construed, and in so doing we find no basis upon which to deny recovery. The ejusdem generis rule inclines us to interpret the language used as applying only to things of the same general kind or class; to wit, poisons. A sock quite obviously does not come within the definition of injurious matter. Furthermore, the balance of the language used in this clause makes it clear that a “ sock ” was not intended *912 to come within the definition of “ poison or other injurious matter ”, since it could not tie “ taken.or administered In conclusion, I find that plaintiff has met her burden of proof uncontradicted by any evidence of defendant to the contrary. Judgment for plaintiff.