Argued February 5, peremptory writ denied February 27, 1975

STATE ex rel CALLEY, *Plaintiff, v.* OLSEN, *Defendant.*

532 P2d 230

*John G. Cox,* Eugene, argued the cause for plaintiff. With him on the briefs were Hutchinson, Harrell, Cox & Teising, Eugene.

*Edwin J. Peterson,* Portland, argued the cause for defendant. With him on the brief were Tooze, Kerr, Peterson, Marshall & Shenker, Portland.

TONGUE, J.

This is a proceeding for a peremptory writ of mandamus directing defendant, a circuit judge in Multnomah County, to issue a protective order to prevent the taking of the deposition of the medical records custodian of Kaiser Hospital in Portland and the examination of its medical records relating to James J. Marandas, who died in a hospital in Klamath Falls following an automobile accident.

The death certificate of the decedent states that the cause of death was

> "Fatal collapse four hours after auto crash probably due either to arteriosclerotic heart disease with acute myocardial infarct or traumatic internal injuries and shock."

James J. Marandas was an insured under a policy of accidental death insurance issued by Hartford Accident and Indemnity Company. Nicholas Karafotias is the beneficiary under that policy and filed a complaint against Hartford for the face amount of the policy. The principal issue in that case is whether the death of Marandas was the result solely of an accidental bodily injury, directly and independently of

all other causes, or whether the death was caused by or resulted from sickness or disease.

On July 12, 1974, at the request of Karafotias, the plaintiff in that case, depositions were taken of Dr. L. I. Klatt, who treated Marandas immediately following the accident and shortly before his death, and Dr. Veldon C. Boge, the Klamath County Medical Examiner. Those depositions were attended by the attorney for Hartford and both doctors were questioned by attorneys representing both parties upon the issues relating to the cause of Marandas' death. The attorney representing plaintiff Karafotias at those depositions was also the attorney representing Nicholas G. Calley, personal representative of the estate of Marandas.

Meanwhile, on June 4, 1974, Hartford had filed a notice to take the deposition of the medical records custodian of Kaiser Hospital in Portland for the purpose of examining the prior medical history of Marandas. On June 24, 1974, a motion was filed in that case by Calley, the relator in this proceeding, as the personal representative of Marandas, for a protective order to prevent the taking of that deposition. On August 23, 1974, after first entering such an order and then allowing a motion by Hartford for reconsideration, Judge Olsen, the defendant in this proceeding, denied the motion for a protective order. Relator then filed in this court a petition for an alternative writ of mandamus, which was issued.

In the brief filed on behalf of the relator in this proceeding it is contended that the Kaiser Hospital medical records of the decedent are subject to the doctor-patient privilege and are not subject to dis-

closure by deposition or discovery because that privilege was not waived by the personal representative of the decedent.

To the contrary, and on behalf of the defendant Olsen, it is contended that such records are subject to discovery either (1) by reason of the provisions of ORS 441.810, relating to hospital records, or (2) because the doctor-patient privilege was waived by the taking of the deposition of two doctors. These contentions raise questions which have not been previously considered by this court.

1. *ORS 441.810, relating to the examination of hospital records, has no application in this case.*

ORS 441.810 provides as follows:

"Any party legally liable or against whom a claim is asserted for compensation or damages for injuries may examine and make copies of all records of any hospital in reference to and connected with *the* hospitalization of the injured person." (Emphasis added)

On behalf of the defendant it is contended that:

"* * * The statute makes hospital records discoverable by 'any party * * * against whom a claim is asserted for compensation * * * for injuries * * *'. The statute is not restricted to claims against any person *causing* such injuries. Certainly Hartford as a group life carrier against whom a claim is pending for death benefits, is a 'party against whom a claim is asserted for compensation for injuries.'

"Nor is the statute restricted to records of the treating hospital relating to the particular hospitalization for the injuries for which a claim is made. Discovery is permitted of '*all* records of *any* hospital * * * connected with the hospitalization of

the injured person.' Had the legislature meant to restrict the availability of hospital records in the above aspects, the legislature easily could (and would) have done so by the addition of simple language. A plain reading of the statute reveals that the legislature, having used broad rather than limiting language, provided for discovery of hospital records in a variety of situations, including the present situation."

Unfortunately, the defendant was misled by relying upon the wording of ORS 441.810, as above quoted, and without checking the wording of the original statute, Oregon Laws 1931, ch 400, § 5, which is a part of the statute providing for hospital liens upon the proceeds of actions by persons hospitalized for personal injury against persons who caused such injuries, and which provides, among other things, as follows:

"Any party legally liable or against whom a claim shall be asserted for compensation or damages for *such* injuries shall have a right to examine and make copies of all records of any hospital in reference to and connected with *such* hospitalization of such injured person." (Emphasis added)

■ Upon comparing the provisions of Oregon Laws 1931, ch 400, § 5, with the provisions of ORS 441.810 it is apparent that significant changes in wording were made in the process of adapting that statutory provision for inclusion as a part of the Oregon Revised Statutes. This provision, as adopted by the legislature, provided for no more than an examination of hospital records "in reference to and connected with *such* hospitalization," i.e., the hospitalization for "such injuries" for which a claim for damages is asserted. It thus becomes clear that in enacting § 5 of this statute the legislature did not intend by this provision to open

for examination all records in any hospital relating to *previous* ailments or injuries suffered by a person who may make any subsequent claim for compensation for damages for any *subsequent* injuries.[①]

■ For these reasons we hold that the provisions of ORS 441.810 do not confer upon Hartford the right to examine the records of Kaiser Hospital relating to the previous medical history of Mr. Marandas.

2. *The doctor-patient privilege is waived when a patient or his personal representative takes the deposition of a treating doctor.*

In *Nielson v. Bryson,* 257 Or 179, 477 P2d 714 (1970), we said that because the doctor-patient privilege is "solely a creature of statute" and because ORS 44.040(2) expressly provides that "If a party * * * offers himself as a witness, it is *deemed* a consent to the examination also of a * * * physician * * * on the same subject," we could not properly hold that the privilege is waived when an action is filed by the patient to recover for personal injuries, as contended by the respondent in that case. In so holding, however, we said (at 184) that:

"* * * [I]n the absence of an *intentional*

---

[①] Indeed, such a broad interpretation of that section might well raise constitutional questions beyond those considered by this court in Nielson v. Bryson, 257 Or 179, 185-190, 477 P2d 714 (1970), in sustaining the constitutionality of this statutory provision.

It should also be noted that the reference by this court in *Nielson* (at 190) to "claims for personal injuries" (as involved in that case) was not intended to mean that this court intended to restrict the application of ORS 441.810 to actions for personal injuries, as distinguished from actions for wrongful death, arising from personal injuries, as suggested by the relator in this case.

*and expressed consent,* the privilege created by ORS 44.040(1)(d) relating to confidential communications between physician and patient can only be terminated in the manner provided by the terms of ORS 44.040(2) or by the terms of some other statute. * * *" (Emphasis added)

More recently, in *Woosley v. Dunning,* 268 Or 233, 520 P2d 340 (1974), we held that because "the termination, as well as the creation, of a privilege is a statutory matter," we could not properly hold that the doctor-patient privilege is terminated upon the death of the patient, as contended by the defendant in that case. Again, however, we were careful to point out (at 246) that in a case in which the personal representative of a deceased patient "called decedent's doctor in order to prove his case," "the plaintiff, as decedent's personal representative, expressly consented to a termination or waiver of the privilege."[2]

■ The distinction between these situations is that the privilege is not terminated by conduct not involving an intent to waive the privilege unless it is provided by statute that such conduct shall terminate the privilege, but that when the patient or the personal representative of a deceased patient calls upon the doctor to testify he must, of necessity, intend to waive the privilege at that time, at least insofar as that doctor is concerned.

■ It follows that if this were an action by the personal representative of the decedent, and if the depo-

[2] In 1973 the Oregon legislature enacted a statute providing, among other things, that upon the filing of an action for personal injuries defendant may demand a copy of all written medical reports relating to the injuries for which damages are sought. Oregon Laws 1973, ch 136, § 3. That statute was discussed in Woosley v. Dunning, 268 Or 233, 241-242, 520 P2d 340 (1974), but is not involved in this case.

sition of Dr. Klatt, the doctor who treated the decedent immediately after the accident and shortly before his death, had been taken at the instance of decedent's personal representative, the doctor-patient privilege would have been terminated at that time, at least as to the testimony of that doctor. See *Barnard v. Cedar Rapids City Cab Company*, 257 Iowa 734, 133 NW2d 884 (1965); *Jenkins v. Metropolitan Life Insurance Company*, 113 Ohio App 163, 168 NE2d 625, 628 (1960); and Annot., 25 ALR3d 1401, 1404 (1969).

Two problems remain in this case: (1) Can the beneficiary of an insurance policy on the life of a decedent waive the doctor-patient privilege? and if so, (2) Does such a waiver of the privilege extend to hospital records of previous injuries or illness?

3. *The beneficiary of this life insurance policy had such a relation to the decedent so as to have the right to waive the benefit of the doctor-patient privilege for the purposes of an action to enforce payment under the policy.*

The contention in this proceeding by the personal representative of the decedent's estate is that he and only he can waive the doctor-patient privilege on behalf of the decedent, despite the desires and needs of the person named by the decedent as the beneficiary of a policy of life insurance. Upon reflection, however, it is clear that this cannot be so.

Under such a rule a wife who was named by her husband as the beneficiary of a life insurance policy for accidental death would be unable to offer the medical testimony required to establish that decedent's death was accidental unless decedent's personal

representative agreed to waive the doctor-patient privilege.

According to C. DeWitt, Privileged Communications Between Physician & Patient 382, § 120 (1958):

"The view taken by the majority of the courts which have considered the question, is that the privilege of the insured may be waived by the beneficiary in an action on the policy or the certificate of insurance. In such case, the beneficiary may be said to represent the insured patient for such purpose. * * *"

In holding that the beneficiary of a policy of insurance may waive the doctor-patient privilege for the purposes of such an action on the policy, it was held in *The Penn. Mutual Life Insurance Company v. Wiler,* 100 Ind 92, 101-102, 50 Am Rep 769, 15 ALR 1544, 1545 (1884), that:

"* * * [W]e are constrained to interpret the [doctor-patient privileged communication] statute as giving to a person, having such a relation to the deceased patient and a contract made by him as that sustained by the appellee, the right in a suit by her on the contract, either to waive the statute or to object on the ground thereof. It may be said that in such case she represents the patient for such purpose. * * *"

To the same effect, see *Olson v. Court of Honor,* 100 Minn. 117, 110 NW 374, 377 (1907); *Toler v. Atlantic Life Ins. Co.,* 248 SW2d 53, 58 (Mo App 1952); *Jenkins v. Metropolitan Life Insurance Company, supra,* 168 NE2d at 630; and *Regan v. National Postal Transportation Association,* 53 Misc 2d 901, 280 NYS2d 319, 327 (1967), all cited by defendant. See also *Industrial Commission of Ohio v. Warnke,* 131 Ohio St 140, 2 NE2d 248, 250 (1936).

Relator would distinguish these cases on the ground that they involved a spouse or "close heir" of the decedent and that a waiver of the privilege was allowed in such cases "to assist the beneficiary." However, no cases are cited in support of the validity of such claimed distinctions and we can perceive none.[9] As discussed below, however, if such a beneficiary can waive the privilege so as to terminate it for the purposes of offering testimony for his benefit, we believe that the privilege is also terminated as to other testimony which may be to his detriment.

■ For these reasons, we hold that Mr. Karafotias, as the person named by the decedent as the beneficiary of his insurance policy of life insurance issued by Hartford and as the plaintiff in an action against Hartford to enforce payment of that policy, had the right and the power to waive the doctor-patient privilege in order to take by deposition the testimony of Dr. Klatt, who treated the decedent immediately after the accident and shortly before his death and that this terminated that privilege, at least insofar as it involved the testimony of Dr. Klatt.

[9] In United States Nat. Life & Casualty Co. v. Heard, 148 Okla 274, 298 P 619, 620 (1931), it does not appear that the beneficiary was either the spouse or a close heir of the deceased-insured and the court there held:

"* * * [T]he beneficiary had the right to waive the privilege granted deceased under the statute, and by offering the evidence of the doctor who waited upon her during her last illness, did waive the privilege as to him."

Cf. Fitzgerald v. Metropolitan Life Ins. Co., 149 SW2d 389, 392 (Mo App 1941), in which it is stated that:

"Defendant further contends that plaintiff as beneficiary under the * * * policy is not entitled to claim the privilege, but that the privilege can be claimed only by insured's executor or administrator. This contention is contrary to the decisions in this state and elsewhere as well. [citing cases]"

4. *Upon the termination of the doctor-patient privilege, hospital records involving the same or previous related injuries or illness are no longer privileged.*

■ We recognize that there is a split of authority upon the question whether the waiver by a patient of the privilege as to one doctor constitutes a waiver of the privilege as to other doctors so as to permit them to testify as to the patient's physical condition. See cases collected in Annot., 5 ALR3d 1244, 1246 (1966), and Supplement (1974). We believe, however, that the better reasoned cases hold to the effect that once a patient has waived the privilege as to one doctor for the purpose of offering testimony favorable to his claim, he has terminated the doctor-patient privilege and cannot then properly exclude the testimony of another doctor which might not be favorable to his claim. See *McUne v. Fuqua,* 42 Wash 2d 65, 253 P2d 632, 638 (1953); *Strader v. Collins,* 280 App Div 582, 116 NYS 2d 318, 321 (1952); *Kelley v. Holmes,* 28 Colo App 79, 470 P2d 590, 592 (1970).

As also stated in *DeWitt, supra* at 432-433:

"* * * To any open-minded person, it must appear illogical and unfair to permit patients, their heirs or personal representatives, to make public confidential matters by the testimony of physicians who are favorable to their interests and then claim the protection of the privilege by closing the mouths of other physicians similarly situated whose testimony might not be advantageous to their interests. When consent is given for the disclosure by one physician, the reason for the statute no longer exists. The secret is out. When a waiver is once made it is general and not special, and its effect should not be limited to a particular purpose or to a particular person."

■ We recognize that in such a case the patient may not have intended to waive the privilege as to the other doctor. We hold, however, that once a patient has intentionally offered or taken the testimony of one doctor, either on trial or by deposition, the privilege is then terminated for all purposes relating to the injury or illness which was the subject of the testimony of that doctor.④

■ In addition, we have recognized that statutes creating various privileged communications are contrary to the common law and that although they must be applied in accordance with their terms, they will nevertheless be strictly construed. See *Nielson v. Bryson, supra* at 182.

■ It follows, in our opinion, that other doctors who have previously treated the patient for the same injury or illness or for any related injury or illness may then be called upon to testify and that doctor or hospital records involving previous related injuries or illness may also be examined. However, as stated

---

④ As stated in C. DeWitt, Privileged Communications Between Physician & Patient 433-34 (1958):

"It is respectfully submitted that in the interests of truth and fair play, the more sensible rule is that when the patient, or his representative, voluntarily makes public the nature and extent of the patient's ailment, physical or mental, by the testimony of one or more of the attending physicians, he relinquishes the benefits of the statutory privilege, and opens the door to a full judicial inquiry into the subject matter; and the adverse party has the right to refute this testimony by the same kind and character of evidence, *viz.,* expert or professional testimony of the very physicians who saw, examined and, perhaps, treated the patient's ailment or injury at or about the same time. This, we believe, is the better rule, and the present trend of judicial opinion is in this direction. There is no reason why this rule should not be equally applicable to the statements of physicians which are contained in hospital records."

in *Collins v. Bair*, 256 Ind 230, 268 NE2d 95, 101 (1971):

> "* * * Lest the physician-patient privilege become nothing more than a legal anachronism, it would seem apparent that the privilege is waived only to those matters causally and historically related to the condition put in issue and which have a direct medical relevance to the claim, counterclaim or defense made. If it be shown that there is nothing more than some casual link having no direct medical bearing on the legitimacy of the claim or defense tendered between the condition in issue and the condition on which discovery is sought, the trial court should properly issue a protective order. * * *"

See also Annot., 5ALR3d 1244, 1247, 1257-1258 (1966).

We need not now decide how close a relationship must be established, because that issue has not been submitted for decision in this case.[9]

For all of these reasons, we hold that the order requiring the custodian of the Kaiser Hospital medical records to allow the medical records relating to James J. Marandas to be examined by counsel for Hartford was a proper order.

The writ of mandamus is denied.

---

[9] Neither is any question raised in this case whether any portion of the Kaiser Hospital medical records would not be properly subject to examination for any other reason. See McCormick on Evidence 730-33, § 313 (2d ed 1972).