**Ruby Lee GAYNIER, Individually and as Independent Executrix of William M. Gaynier, Deceased, Relator,**

v.

**The Honorable H. Dee JOHNSON, Respondent.**

No. 05–83–01363–CV.

Court of Appeals of Texas, Dallas.

Feb. 14, 1984.

Rehearing Denied June 18, 1984.

David M. Stagner, Sherman, for relator.

Ernest E. Figaro, Jr., Thomas A. Graves, Dallas, for respondent.

Before STEPHENS, STEWART and SHUMPERT, JJ.

STEPHENS, Justice.

Ruby Lee Gaynier, individually and as independent executrix of the estate of William M. Gaynier, Deceased, brought an action in a Dallas district court against defendants, Reuben M. Ginsberg, attorney for the estate, Glenn Justice Mortgage Company, Inc., George H. Cramer, Donald J. Forman and 505 North Ervay Building, a Joint Venture, to set aside a conveyance of real property alleging misrepresentation, fraud, deceit and breach of a fiduciary duty.

In an original proceeding in this court, Ruby Lee Gaynier as relator petitions for a writ of mandamus to prevent the execution of an order issued by respondent, a district judge in Dallas County, that the defend-

ants be allowed to depose relator's personal psychiatrist concerning privileged mental health information. She contends that there are no exceptions to TEX.REV.CIV. STAT.ANN. art. 5561h (Vernon Supp.1982–1983) or TEX.R.EVID. 510 that authorize the disclosure contemplated by the order, and that respondent is under an affirmative duty, imposed by law, to prevent the disclosure of the privileged information. Relator asks this court to order the district judge to rescind his order and enter a new order preventing any interrogation of the psychiatrist. We agree with her contention. Accordingly, we issue the writ of mandamus.

In her second amended petition she alleged that two deeds executed in 1972 resulted from misrepresentation, fraud, deceit, and breach of a fiduciary duty. She alleged that her husband's signature on one deed was a forgery, and that she was tricked into signing the second deed. When deposed, relator testified that she had been treated by a psychiatrist between 1971 and 1973, and answered some questions concerning her treatment. After relator's deposition, defendants served her with a request for production of documents, seeking to obtain the medical records relating to her treatment by the psychiatrist. Relator asserted an objection based on article 5561h. The court denied relator's motion and required relator to produce the medical records for his *in camera* inspection on or before June 14, 1982. Before June 14, 1982, relator's attorney wrote a letter to the court indicating that the medical records would not be produced by the date in the order. The defendants moved for sanctions and expenses, seeking dismissal of relator's suit for non-compliance with the order. Before the hearing on the motion, relator submitted the medical records to the court for *in camera* inspection. On June 24, 1982, the trial judge heard the motion for sanctions, and on June 30, his last day as judge of that court, entered an order on the motion. The order recited that the trial judge found and concluded that the medical records which had been delivered to him for his *in camera* inspection were likely to be relevant to the issues in the suit, and were discoverable. He then ordered the medical records released to defendants.

Whether the medical records were inappropriately released to the defendants is not before this court. Certain testimony in the medical records concerning the property at issue in the lawsuit apparently interested the defendants, and they sought to depose relator's psychiatrist. Relying on article 5561h and rule 510, relator moved for a protective order to prevent the deposition which respondent, successor to the original trial judge, overruled November 18, 1983. In his order, respondent reserved ruling on the admissibility of the deposition at trial, and set out procedures to minimize the impact of the disclosures to be made at the deposition, but he still allowed disclosures to the attorneys, the court reporter, and ultimately to himself. Respondent's order is very broad, allowing the defendants to depose the psychiatrist "with respect to any treatment of, consultation with, diagnosis of, evaluation of, statements made by, or any communications or transactions with Ruby Lee Gaynier after July 1, 1972."

Relator contends that the communications are privileged and cannot be disclosed; defendants set out several arguments rebutting this contention, specifically that the relator waived her privilege through various acts or omissions and that the relator cannot use the privilege offensively in the lawsuit as a "sword" to testify untruthfully at trial, but only as a shield. Furthermore, defendants state that the relator's action is premature and that she has not sustained her burden of proof that respondent clearly abused his discretion in order to be entitled to mandamus relief.

### Privileged Communications as Governed by Article 5561h and Rule 510

Effective August 27, 1979, article 5561h created a privilege of confidentiality for mental health information. The Texas Supreme Court in *Ex parte Abell*, 613 S.W.2d 255 (Tex.1981), expressly ruled that since article 5561h is procedural in nature and

destroys no vested rights, it applies retroactively. The court noted that by the language below the act evidences an intent to protect communications prior to the effective date of the act: "The prohibitions of this Act continue to apply to confidential communications or records concerning any patient/client irrespective of when the patient/client received services of a professional." *Abell* at 259. TEX.REV.CIV. STAT.ANN. art. 5561h § (2)(d) (Vernon Supp.1982–1983). Article 5561h and rule 510 govern all post-1979 discovery or release of information relating to diagnosis, examination, evaluation, or treatment under the direction of a mental health professional. Article 5561h mandates that: "Communication between a patient/client and a professional is confidential and shall not be disclosed except as provided in Section 4 of this Act."

On November 23, 1982, the Supreme Court of Texas entered an order adopting and promulgating the Texas Rules of Evidence, to become effective on September 1, 1983, under which article 5561h is deemed repealed, insofar as it relates to civil actions, and replaced by rule 510, which also provides for "Confidentiality of Mental Health Information." TEX.R.EVID. 510. Rule 510(b)(1) provides that: "Communication between a patient/client and a professional is confidential and shall not be disclosed." Rule 510 and article 5561h are almost identical. Rule 510(b)(4) only differs from the retrospective application clause found in article 5561h in its substitution of "rule" for "Act."

■ In light of *Abell* and the similarities between the rule and the statute, we hold that rule 510 also applies retrospectively and would apply to the communications in this case. The drafter's comment to rule 510 states that it only governs these disclosures in judicial or administrative proceedings, and that whether a professional may or must disclose such communications in other circumstances is governed by article 5561h. Clearly a judicial order authorizing a deposition is a judicial proceeding governed by rule 510.

■ Because Dr. Harrington is a professional under rule 510(a)(1), Mrs. Gaynier is a patient/client under rule 510(a)(2), and the communication was in the nature of consultation for the diagnosis, examination, evaluation, or treatment of an emotional or mental condition, we hold that the information sought by the lower court's order violates the privilege of confidentiality afforded Mrs. Gaynier by rule 510.

Both article 5561h and rule 510 set out exceptions to the general rule of privilege. Defendants contend that trial judges have more discretion to create a new exception under rule 510 than under article 5561h, noting that the language in rule 510 does not say, as contrasted to the language in article 5561h, that the listed exceptions are the only exceptions. We do not speculate on the reason for the change, if any, but it does not mandate extensive judicial legislation.

■ Under rule 510, it is the existence of the relationship, rather than the specific content of each statement made, that determines the nature of the communication. The plain language of the rule says, "Communication between a patient/client and a professional is confidential and shall not be disclosed." Rule 510(b)(1). Although the privilege may be lost when a particular consultation ceases to be for the purpose of diagnosis, evaluation, or treatment of a mental or emotional condition, a consultation for those purposes protects all communications during that consultation. Under the facts, we hold that the discussion of property, during the course of the consultation, does not remove the privilege.

To determine the intent of the Supreme Court in promulgating this rule, we look to the history of the mental health information privilege. There is no common law privilege against compelled disclosure of communications between a mental health professional and a patient/client. As a matter of policy, at common law, society's interest in the ascertainment of truth was deemed to be more important than its interest in maintaining confidentiality within

professional relationships. *See* 8 WIGMORE EVIDENCE § 2286, at 528–531 (McNaughton rev. 1961); 18 Comment, The Psychotherapist—Patient Privilege in Texas, HOUS.L.REV. 137, 138 (1980).

The defendants claim that the mental health privilege is intended to protect only those communications which are necessary for obtaining the benefits of a professional relationship— *i.e.*, enabling the physician to prescribe treatment—and is not a blanket privilege to make confidential all communications regardless of their substance. 8 WIGMORE, EVIDENCE § 2383 (McNaughton rev. 1961). This section of Wigmore, however, addresses a physician-patient privilege, which is distinguishable from the privilege related to mental health treatment. The Texas legislature created a privilege for mental health information before it created a physician-patient privilege. We distinguish the medical relationship where a person needs only to relate physical symptoms to his physician, from the relationship established for psychotherapeutic treatment where the very nature of the consultation requires free and complete disclosure of all thoughts and feelings of the patient. *See* 18 HOUS.L.REV. at 141–42.

The defendants urge that the privilege should be strictly construed *against* the assertion of privilege. They refer to *Wade v. Abdnor*, 635 S.W.2d 937 (Tex.Civ.App.—Dallas 1982, writ dism'd) where "seeking" information was not prohibited by Art. 5561h. This court held in *Wade* that the plain language of the statute prohibited "disclosure" rather than "seeking." *Wade* at 939. We also held in *Wade* that, as to the competing interests of full disclosure and the need for confidentiality in mental health treatment, the Texal Legislature has reconciled the conflict in favor of the confidential relationship. *Wade* at 938. 18 HOUS.L.REV. at 138.

### Timeliness of the Disclosure Issue

Defendants argue that Gaynier's action in seeking this writ is premature. They contend that the purpose of rule 510 is to prevent disclosures to juries, and that no harm occurs until a judge admits the deposition into evidence at trial. They also contend that no harm will occur because they already possess medical records concerning Gaynier, and that therefore, no new allegedly privileged information will be disclosed. Additionally, since all parties are under an order of confidentiality concerning the contents of the medical records, no additional harm would result. We disagree.

■■ We hold that the disclosures prohibited by rule 510 apply to everyone, and not just to juries, as defendants contend. Under 5561h, the precursor to rule 510, the Texas Supreme Court held that answers to interrogatories were privileged and did not have to be disclosed. *Abell*, 613 S.W.2d at 263. The purpose of this privilege is to facilitate effective mental health treatment. A patient must be able to rely upon the fact that when he or she enters the professional's office and begins treatment, his or her communications are confidential and are not disclosable to anyone beyond the narrow legislative exceptions.

### Waiver

Defendants assert that relator waived any privilege of nondisclosure by her own statements in her deposition, by her lack of objection to certain questions at her deposition, and by placing her mental condition in issue. They also claim that she is not entitled to the privilege because a third party knew about her treatment, because she did not timely produce the medical records, and because when the medical records were tendered to the defendants, relator did not petition for a writ of mandamus. We do not agree.

■ Both rule 510 and article 5561h provide that a patient/client can waive his privilege in writing. Following rule 510, new TEX.R.EVID. 511 provides for a waiver of a privilege against disclosure by voluntary disclosure. Rule 511 is applied retrospectively and it is applicable to this pro-

ceeding for the same reasons that rule 510 is applicable. Rule 511 provides:

A person upon whom these rules confer a privilege against disclosure waives the privilege if he or his predecessor while holder of the privilege voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This rule does not apply if the disclosure itself is privileged.

Article 5561h has been construed to only allow for a written waiver and not an implied waiver of its privilege of nondisclosure. *In re T.L.H.*, 630 S.W.2d 441, 445 (Tex.App.—Corpus Christi 1982, writ dism'd). Rule 511 can be seen as a relaxation of that rule, and as a legislative statement of what constitutes a waiver of privileged communications.

■■■ The most important words in rule 511 are the words "voluntary" and "significant." The relator must have voluntarily disclosed a significant amount of privileged information to have waived her privilege. The standard rule for waiver is that it must be the intentional relinquishment of a known right. *Johnson v. Zerbst*, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The underlying lawsuit in this case does not center on the privileged communications made to relator's psychiatrist but on the validity of two deeds. Reviewing relator's deposition, in light of rule 511, we hold that she did not voluntarily disclose a significant amount of the privileged information.

At her deposition, relator testified that she had been treated by a psychiatrist for a certain illness between 1971 and 1973. During the course of her treatment she had been hospitalized twice, and had received eleven shock treatments on one occasion and four on the other. Relator further testified to certain communications made by her psychiatrist to her concerning her treatment, but she did not testify as to what she told her psychiatrist. She testified that: "[T]he doctor wanted me to stay for three weeks.... Dr. Harrington thought that I might be depressed again, and he suggested I go back.... I had four shock treatments, and he decided I did not need any more.... [I]t was after, I know, because Dr. Harrington was afraid I would get depressed again."

Rule 511 states that some disclosure, but not a significant part, is permissible. Nothing in relator's deposition demonstrates an intention to relinquish the confidential communications between a patient and his psychiatrist concerning his state of mind at the time of treatment. Defendants contend that relator answered questions concerning her treatment without objection and therefore voluntarily waived her privilege.

The Supreme Court of Michigan has held that where a defendant's personal psychiatrist is on a panel of three psychiatrists that files a report on a defendant's mental state to be considered at a hearing before a jury, the defendant does not waive his privilege by not objecting prior to the hearing. *People v. Wasker*, 353 Mich. 447, 91 N.W.2d 866 (1958) (*en banc*). In *State v. Olsen*, 271 Or. 369, 532 P.2d 230 (1975) (*en banc*), the Supreme Court of Oregon in *dicta* said that the Oregon doctor-patient privilege is not terminated by conduct not involving an intent to waive the privilege unless it is provided by statute that such conduct shall terminate the privilege. The Oregon court held that once a patient or his personal representative has taken the deposition of a treating doctor, then he waives the doctor-patient privilege as to the subject of that doctor's testimony.

Defendants cite *Lucas v. Wright*, 370 S.W.2d 924 (Tex.Civ.App.—Beaumont 1963, no writ) for the contention that a party waives his privilege if testimony is given without objection about the privileged matter. In *Lucas* the court held that communications between partners are not privileged and that the "waived" testimony was admissible regardless of whether it was waived or not.

■■■ The other Texas cases on waiver cited by defendants are cases where there was a clear intentional waiver that directly affected the issue under litigation. In *El-*

*oise Bauer & Assoc., Inc. v. Electronic Realty Associates, Inc.*, 621 S.W.2d 200, 204 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.), the court held that when an exhibit highly material to several issues is voluntarily produced during pre-trial discovery proceedings, the attorney-client privilege is waived. In *Hurley v. McMillan*, 268 S.W.2d 229 (Tex.Civ.App.—Galveston 1954, writ ref'd n.r.e.), the court held that a plaintiff, by denying having made a statement to his insurance company and by not claiming his attorney-client privilege at his plea of privilege trial, thereby waived his nondisclosure privilege. In that case plaintiff brought a cause of action for personal injuries and damages from an automobile collision and the statement made to his insurance company went directly to the litigated issue. In this case, defendants contend that the communications between relator and her psychiatrist were not confidential because a third party, relator's husband's secretary, knew about her shock treatments. There is no indication that relator voluntarily and intentionally disclosed any confidential information to the secretary. Our facts are inapposite to the facts in *Dobbins v. Gardner*, 377 S.W.2d 665 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.) where a doctor waived his attorney-client privilege by "voluntarily and intentionally" disclosing confidential information to another doctor, who was not his agent or representative. The report contained the doctor's detailed description of the facts of the case, and as in *Hurley*, was therefore highly material to the litigation.

We further note that *Munzer v. Swedish American Line*, 35 F.Supp. 493 (S.D.N.Y. 1940), cited by defendants, concerns an action to recover damages for a mental and physical collapse allegedly resulting from the treatment the plaintiff in that case received as a passenger on a ship. In that case plaintiff clearly placed her mental condition in issue by her allegations. The court held that she had "voluntarily" waived her rights through her answers to interrogatories concerning her treatment and hospitalization and through her failure to object and to assert her statutory privi-

lege. We note that her mental condition was highly probative of the issue which she was litigating. She voluntarily made disclosures that she knew were central to the litigation.

■■■■ Defendants contend that relator's pleading of fraud and trickery put her mental condition in issue analogous to the manner in which an insanity plea or a malpractice issue puts physical condition in issue. They cite *Florida v. Axelson*, 80 Misc.2d 419, 363 N.Y.S.2d 200 (N.Y.Sup.Ct. 1974) (insanity pleaded); *Collins v. Bair*, 256 Ind. 230, 268 N.E.2d 95 (1971) (personal injury); and *Dale v. Sherman*, 75 A.D.2d 612, 427 N.Y.S.2d 65 (N.Y.App.Div.1980) (malpractice action against chiropractor). We disagree. Pleading fraud and trickery does not necessarily put mental condition in issue, thus enabling a defendant to depose a psychiatrist concerning privileged communications. We note that the Supreme Court of Texas addressed this issue in formulating rule 510 by creating exceptions to rule 510's basic privilege in malpractice proceedings and proceedings where the patient/client seeks damages for his mental condition. Relator does not seek damages from the defendants for her mental condition; thus, the exception does not apply.

■■■■ In reliance on *Ramsay v. Santa Rosa Medical Center*, 498 S.W.2d 741 (Tex.Civ.App.—San Antonio 1973, writ ref'd n.r.e.), *appeal dismissed w.o.j.*, 417 U.S. 938, 94 S.Ct. 3062, 41 L.Ed.2d 661 (1974), defendants contend that relator cannot assert her privilege because she did not timely produce the medical records. In *Ramsay*, the court affirmed the trial court's action of dismissing appellant's lawsuit because appellant refused to disclose a diary for in-court inspection. Appellant's refusal was predicated on a constitutional right of privilege, and not on a statutory right as we have here. We have not been directed to, nor are we aware of, any authority that a failure to timely produce records can deprive a litigant of a statutory right of protection against the taking of an oral deposition, and we decline to so hold.

Defendants further contend that relator's petition for writ of mandamus is untimely because of her failure to petition for a writ of mandamus when the medical records were released to them. We conclude that appellant's failure to seek mandamus at that time cannot bar her present petition because she is asserting a valid claim of privilege. The Fifth Circuit Court of Appeals has held that when a party asserts a valid claim of privilege, the courts have no authority to demand disclosure and therefore should not impose sanctions. *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir.1979).

### The Use of Privilege as a Shield and Not a Sword

Defendants contend that relator may claim her privilege as a shield but not as a sword; she cannot hide behind the mental health privilege to foreclose discovery relevant to the action, a tactic prohibited by a long line of cases. *See Lyons v. Johnson*, 415 F.2d 540 (9th Cir.1969); *Bramble v. Kleindienst*, 357 F.Supp. 1028 (D.Colo.1973), *aff'd, Bramble v. Richardson*, 498 F.2d 968 (10th Cir.), *cert. denied, Bramble v. Saxbe*, 419 U.S. 1069, 95 S.Ct. 656, 42 L.Ed.2d 665 (1974); *Henson v. Citizens Bank of Irving*, 549 S.W.2d 446 (Tex. Civ.App.—Eastland 1977, no writ). These cases involve situations where the plaintiffs refused to answer questions, claiming fifth amendment privileges. The courts refused to allow the plaintiffs to prevail on the merits when defendants had no chance to defend themselves. Plaintiffs in these cases used the privilege as a sword and not as a shield as they used the privilege as an offensive weapon to preclude the defendants from preparing their defense. Relator is not employing that tactic; she has voluntarily submitted to extensive discovery. The defendants can build an adequate defense on her deposition without the deposition of the psychiatrist, and without her disclosures to the psychiatrist.

Defendants also argue that Gaynier cannot hide behind a privilege to testify untruthfully. They cite *State v. Soney*, 177 N.J.Super. 47, 424 A.2d 1182 (N.J.Super.Ct. App.Div.1980), in which the defendant testified on direct examination that he had taken certain medicine to prevent seizures prior to an accident he had. Over objection, his doctor was allowed to testify that he had been informed by defendant that he (defendant) had not taken his medicine. The court permitted the doctor's testimony, piercing the privilege, because it felt that defendant's own testimony waived the privilege with respect to that particular statement, and not because the defendant was hiding behind the privilege to testify untruthfully. Here, as we have demonstrated, there has been no waiver sufficient to permit piercing of the privilege. Further, in *Soney*, the court only permitted the admission of one statement, not a *carte blanche* to ask any question desired as the court's order here permits.

### Abuse of Discretion

It is well settled that mandamus will lie to enforce the performance by a judge of a ministerial act. But the courts will only allow mandamus to lie to enforce the performance of a discretionary judicial act where there is a clear abuse of discretion and the litigant has a clear legal right to extraordinary relief in a situation where there is no available adequate remedy such as an appeal. *State v. Sewell*, 487 S.W.2d 716 (Tex.1972); *Maresca v. Marks*, 362 S.W.2d 299 (Tex.1962); *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677 (1956). When a relator seeks mandamus from a discretionary act, he has a heavy burden. *Sewell*, 487 S.W.2d at 718.

In *Stewart v. McCain*, 575 S.W.2d 509 (Tex.1978), the Texas Supreme Court held that the Texas Banking Code created an absolute privilege against disclosure of confidential information held by the Texas Banking Department concerning the financial condition of state banks. The court held that the statute prevented discovery of the information, and that the judge's order of disclosure was a clear abuse of discretion.

The judge's task in this situation was a difficult one because of the complexity of the issues involved and the new rules. He erred in construing the rules to allow him discretion in an area where he had none. A writ of mandamus is relator's only available adequate remedy since once the deposition had taken place, the communications would have been disclosed. Under the language of the rules, relator has a clear legal right to extraordinary relief. The communications are privileged; the privilege has not been waived; and the relator has used her privilege only as a shield and not as a sword. We therefore hold that the trial judge clearly abused his discretion in authorizing the deposition. Accordingly, we grant relator's writ of mandamus.

*Motion for Rehearing*

After the issuance of our opinion on February 14, 1984, the defendants in the trial court filed a Motion for Rehearing and Motion for Rehearing en banc. Before action on the Motion for Rehearing, Relator filed a Motion to Dismiss the Motions for Rehearing on the grounds that the doctor whose deposition was ordered taken by the trial court had died on April 1, 1984, and thus the matter was moot. The defendants responded with a Conditional Motion to Withdraw the original panel opinion of February 14, 1984.

The defendants rely upon the case of *Texas Foundries, Inc. v. International Moulders and Foundry Worker's Union*, 151 Tex. 239, 248 S.W.2d 460 (1952), for the proposition that our original opinion should be withdrawn. We disagree.

We had carefully considered defendant's motions for rehearing, and had been unpersuaded that our original opinion was in error. The doctor's unfortunate death occurred after our opinion was handed down, yet before our order on the Motion for Rehearing was issued, thus the Order of Mandamus has become moot.

Relator's Motion to Dismiss defendant's motions for rehearing on the ground that the question is now moot is granted, and the order of Mandamus is withdrawn.

Defendant's Conditional Motion to Withdraw Panel Opinion is overruled.