**In the Interest of T. L. H., a Minor Child.**

**No. 1950.**

Court of Appeals of Texas, Corpus Christi.

Feb. 25, 1982.

Rehearing Denied April 1, 1982.

James L. Post, Houston, Jones & Post, Victoria, Earle Lilly, Lilly, Hamilton & Short, Houston, for appellant.

Larry Woody, Woody, Gumm & Hoffman, Barbara Fritz, Fritz & Fritz, Victoria, for appellee.

Before BISSETT, YOUNG and GONZA-LEZ, JJ.

## OPINION

BISSETT, Justice.

This is a suit affecting the parent-child relationship. The parties will be identified only by their initials, pursuant to Tex.Fam. Code Ann. § 11.19(d) (Vernon 1975).[1] The appellant-father will be referred to as "E. H."; the appellee-mother as "P. H." The child will be referred to as either "the child" or "T. L. H."

On January 24, 1978, E. H. and P. H. were divorced. P. H., the mother, was awarded managing conservatorship of T. L. H., who was then four years old. E. H. was awarded possessory conservatorship, ordered to pay child support, and granted visitation rights. On August 21, 1978, E. H. filed a motion to modify the custody order, seeking to have himself named managing conservator. P. H. answered with a general denial and a cross-action seeking termination of E. H.'s parental rights. Following a lengthy jury trial, the court instructed a verdict against E. H. on his motion to modify and rendered judgment, in accordance with the jury's findings, terminating E. H.'s parental rights.

The judgment also decreed that P. H. recover from E. H. attorney's fees in the amount of $25,000.00 for legal services rendered to her from the inception of the case through the trial, and an additional sum of $2,500.00 if the case was appealed to the Court of Civil Appeals, plus an additional sum of $2,500.00 if the case was taken to the Supreme Court. The judgment also ordered E. H. to pay to the attorney ad litem the sum of $10,000.00 for legal services rendered T. L. H. through the trial, plus an additional sum of $1,500.00 if the case was appealed to the Court of Civil Appeals, and an additional sum of $1,500.00 if the case was taken to the Supreme Court. The judgment also ordered E. H. to pay into the registry of the court a total of $3,996.94 for certain expenses set out therein. E. H., in thirty-five points of error, attacks the judgment insofar as it instructed a verdict against him on the issue of a change of managing conservatorship, decreed that the parent-child relationship be terminated, and awarded attorney's fees to P. H. He does not appeal those portions of the judgment which awarded attorney's fees to the attorney ad litem and which ordered him to pay the aforesaid expenses; therefore, the judgment is now final as to those issues.

■ We note at the outset that E. H. does not cite any authority in his brief for points of error 8, 9, 16 through 25, 29, 30, 33 and 34. He presents only general argu-

---

1. All statutory citations are to the Texas Family Code, unless indicated otherwise.

ments as to those points. A point of error that is not briefed fails to meet the minimum requirements of Rule 418, T.R.C.P., and is considered waived. *Vanguard Equities, Inc. v. Sellers,* 587 S.W.2d 521, 524 (Tex.Civ.App.—Corpus Christi 1979, no writ). We, therefore, will not consider these points of error.

### The Motion to Modify

E. H.'s motion to modify the original custody order was filed within one year after the date of rendition of the original order. To have been entitled to a modification of the order, E. H. was required to comply with the requirements of § 14.-08(d)(1), which provides:

> "(d) If the motion is filed for the purpose of changing the designation of the managing conservator and is filed within one year after the date of issuance of the order or decree to be modified, there shall be attached to the motion an affidavit executed by the person making the motion. The affidavit must contain at least one of the following allegations along with the supportive facts:
>
> > (1) that the child's present environment may endanger his physical health or significantly impair his emotional development; . . . and the modification is in the best interest of the child."

In his affidavit attached to the motion to modify, E. H. alleged that his daughter, T. L. H., had been sexually abused since the original custody order was signed. At the trial, E. H. testified that the child told him she had been sexually abused by her mother and others. This, of course, was hearsay and constituted no evidence in support of E. H.'s motion. The child did not testify. The only nonhearsay evidence of sexual abuse came from Dr. Bridges. He stated that he examined T. L. H. and based on what he found *and* what the child told him, he concluded that she had been sexually abused. On cross-examination, however, it was revealed that the symptoms of sexual abuse found by Dr. Bridges could have been caused by factors other than sexual abuse. He further testified that the symptoms

could have been inflicted no more than a week prior to his examination. E. H.'s second wife testified that the child was living with E. H. during the seven-day period preceding Dr. Bridges' examination. The appointment with Dr. Bridges was made by E. H. seven to ten days in advance of the examination. Thus, the only conclusion reasonable minds could draw from this evidence was that the symptoms which Dr. Bridges diagnosed as sexual abuse could have occurred *only* during the time period in which E. H. had custody of the child. Such is no evidence that the child was abused by P. H., and is no evidence of a material change of circumstances justifying a change of custody.

The basis for E. H.'s motion to modify the custody order was his allegations that P. H. was a sexual deviate who sexually molested the child. E. H. raises two points of error which contend that the trial court improperly prevented him from substantiating his allegations.

He contends, in point of error 14, that "it was error for the court to refuse to admit questions at the voir dire stage of the trial regarding homosexuality and/or lesbianism" of P. H. We overrule this point as being without merit. The record of the voir dire stage of the trial has been examined. At no time did E. H. attempt to ask questions regarding homosexuality or lesbianism of P. H. There is, therefore, nothing before this Court for review.

He further asserts, in point of error 15, that "it was error for the court to refuse to admit evidence of homosexuality and/or lesbian attitudes and/or sexual concepts and/or sexual attitudes and/or actual practices of sex (of P. H.) that directly or indirectly involved the minor child." This point is also without merit and is overruled. The trial court did not prohibit the introduction of evidence regarding the alleged homosexual acts of P. H. which may have affected the welfare of the child. E. H.'s present wife was permitted to testify that the child told her that P. H. and a female friend of P. H. would bathe together, go to bed together, and kiss each other between

the legs. The trial court only prevented E. H. from *labeling* P. H. and the friend as lesbians. The bill of exceptions prepared by E. H. contains both admissible and inadmissible evidence. In such a situation, E. H. cannot complain of the trial court's refusal to admit the testimony contained in the bill. *Texas Employers' Ins. Ass'n. v. Garza*, 557 S.W.2d 843, 847 (Tex.Civ.App.—Corpus Christi 1977, no writ). Further, much of the admissible testimony in the bill was admitted into evidence at other stages of the trial.

■ In two other points of error, E. H. contends that the trial court erred in prohibiting his cross-examination of P. H.'s psychologist concerning P. H.'s sexual attitudes. The basis for this ruling was the privilege afforded by Tex.Rev.Civ.Stat.Ann. art. 5561h, § 2(a) (Vernon Supp. 1980–1981). This statute provides that communications between a patient and a psychologist *shall not be disclosed* except as provided in Section 4 thereof. E. H. argues that the privilege was waived or, alternatively, should not be applied in child custody cases. We disagree. Section 4 of Article 5561h provides various exceptions to the privilege, but none are applicable to this case. There was no written waiver signed by P. H., and the statute does not provide for the implied waiver asserted by E. H. We refuse to create an exception for child custody cases as requested by E. H.

The trial court correctly instructed a verdict against E. H. on his suit to modify the original custody order. Points of error 11, 12, 13, 14, 15, 26 and 27 are overruled.

### Termination of Parental Rights

The termination of E. H.'s parental rights was based on the jury's answers to three special issues. These issues are:

### SPECIAL ISSUE NO. 2

"Do you find from clear and convincing evidence that [E. H.] knowingly placed or knowingly allowed [T. L. H.] to remain in conditions which endangered the physical or emotional well-being of [T. L. H.]?

Answer 'Yes' or 'No.'

Answer: YES

### SPECIAL ISSUE NO. 2a

Do you find from a preponderance of the evidence that [E. H.] has engaged in conduct that endangered the emotional or physical well-being of the child, [T. L. H.]?

Answer 'Yes' or 'No.'

Answer: YE (sic)

If you have answered 'no' to Special Issues No. 2 and 2a, then do not answer this Special Issue.

### SPECIAL ISSUE NO. 3

Do you find from clear convincing evidence that termination of the parent-child relationship between [E. H.] and [T. L. H.] would be in the best interest of [T. L. H.]?

Answer 'yes' or 'no.'

Answer: YES"

Special Issue 2 was taken from Section 15.02(1)(D), which provides:

"A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:

(1) the parent has:

\*     \*     \*     \*     \*     \*

(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or ..." § 15.02(1)(D)

■ Termination of parental rights under subsection (1)(D) of Section 15.02 requires a showing, by clear and convincing evidence, that the child has been placed in a *physical environment* dangerous to her physical or emotional well-being. See, e.g., *B. J. M. v. Moore*, 582 S.W.2d 619, 620 (Tex.Civ.App.—Dallas 1979, no writ) (unsanitary and cluttered apartment); *Gonzalez v. Texas Dept. of Human Resources*, 581 S.W.2d 522, 528 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n. r. e.), cert. denied 445 U.S. 904, 100 S.Ct. 1079, 63 L.Ed.2d 319

(no electricity or gas; no food, "just a few cockroaches"); *Sanchez v. Texas Dept. of Human Resources,* 581 S.W.2d 260, 263 (Tex.Civ.App.—Corpus Christi 1979, no writ) (four adult women and twenty-five children living in one small three-room home with one bathroom; "house was dirty, cluttered and had decaying food scattered throughout"). Since the legislature inserted subsection E into Section 15.02, which permits termination of parental rights because of a parent's *conduct,* we hold that subsection D can be utilized as a ground for termination of parental rights *only if* there is clear and convincing evidence that the child was placed in conditions or surroundings dangerous to his or her physical or emotional well-being; parental conduct alone is insufficient under subsection D.

■ The record in this case contains no evidence that E. H. ever exposed his child, or permitted her to be exposed, to a physical environment dangerous to her physical or emotional well-being. We, therefore, hold that the trial court erred in submitting Special Issue number 2, and that the jury's affirmative answer to that issue has no support in the record. It cannot be used to support the judgment which terminated E. H.'s parental rights.

We next consider Special Issue number 2a. As is apparent from a reading of that special issue, the wrong standard of proof was used. The Texas Supreme Court has held that in proceedings where the involuntary termination of parental rights is sought, the "clear and convincing evidence" standard of proof is required. *In Re G. M.,* 596 S.W.2d 846, 847 (Tex.1980). It is reversible error to use a lesser standard of proof, namely, a preponderance of the evidence. *In Re G. M.,* supra; *In Re J. J.,* 605 S.W.2d 726 Tex.Civ.App.—Eastland, writ refused per curiam, 617 S.W.2d 188 (Tex. 1981); *In Re Hare,* 599 S.W.2d 856, 858 (Tex.Civ.App.—Texarkana 1980, no writ).

The appellee argues that the appellant waived this error because he failed to object to the court's charge on this ground. We disagree. In *Woodard v. Texas Dept. of Human Resources,* 573 S.W.2d 596, 598 (Tex.Civ.App.—Amarillo 1978, writ ref'd n. r. e.), the court held that the use of the wrong standard of proof in a termination case may be raised for the first time on appeal. The court reasoned that such error was "truly fundamental" because "the interest of the public is affected when the custody of a child is at issue." *Id.* at 597.

■ The United States Supreme Court has recognized parental rights as fundamental constitutional rights. *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). The Texas Supreme Court has held that due process requires that parental rights may be terminated only upon "proof more substantial than a preponderance of the evidence." *In Re G. M.,* supra, at 847. In the case at bar, all sides agree that a lesser standard of proof was used to terminate E. H.'s parental rights. We hold that the failure to object to the use of the wrong standard of proof, does not justify the termination of E. H.'s parental rights on less than clear and convincing evidence.

Since this case involves the termination forever of E. H.'s fundamental constitutional right to be a parent to T. L. H., we draw an analogy between this case and a criminal case wherein equally fundamental rights are at stake. If, after a person was convicted of a crime and sentenced to serve a term in prison, it was discovered that his conviction was based upon a finding of guilt from a preponderance of the evidence, rather than beyond a reasonable doubt, no one would argue that this error was not fundamental and could not be raised for the first time on appeal. It would be manifestly unjust to say that the defendant waived this error because his attorney failed to object to the court's charge. We think it would be equally unjust to hold that E. H. waived a similar error because his attorney failed to timely object to the court's charge in this case. Thus, Special Issue number 2a, together with the jury's answer thereto, does not furnish a basis which supports the judgment terminating E. H.'s parental rights.

In Special Issue number 3, the jury found that termination of E. H.'s parental rights would be in the best interest of the child. However, this issue, standing alone, cannot support the termination of E. H.'s parental rights. *Mayfield v. Smith*, 608 S.W.2d 767, 771 (Tex.Civ.App.—Tyler 1980, no writ); *Compasano v. State*, 576 S.W.2d 100, 103 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ). Section 15.02 requires a two-prong determination before parental rights may be involuntarily terminated. A finding must be made 1) that the parent is unfit, *and* 2) that termination is in the best interest of the child. Points of error 1 and 5 are sustained.

We hold that the portion of the trial court's judgment which terminated E. H.'s parental rights must be reversed and the cause remanded for a new trial. In view of a new trial, we also address the issues raised as a result of the admission into evidence by the trial court of a tape recording and copies of the originals of two audio-video (video) tapes.

The tape recording consisted of a dialogue between P. H., the mother, and T. L. H., the child. It was made by P. H. in March, 1978. The two video tapes consisted of dialogues between Dr. Uri L. Gonik, a psychologist, and the child. One was made in January, 1979; the other was made in December, 1980. The tape recording covered about 20 minutes and each of the video tapes lasted about an hour.

Counsel for P. H. offered the tape recording in evidence "not for the truth of the matter stated, but to show the emotion and state of mind of the little girl." It was admitted over objections by counsel for E. H.

E. H. argues that the admission of the tape recording in evidence did not comport with the rules laid down by this Court in *Cummings v. Jess Edwards, Inc.*, 445 S.W.2d 767 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n. r. e.), in determining the admissibility of tape recordings. We agree. We said in that case that in order for a tape recording to be admissible, it was incumbent for the offeror to show or establish:

(1) that the recording device was capable of taking testimony;

(2) that the operator of the device was competent;

(3) the authenticity of the correctness of the recording;

(4) that changes, additions, or deletions have not been made;

(5) the manner of the preservation of the recording;

(6) the identification of the speakers; and

(7) that the testimony elicited was voluntarily made without any kind of inducement.

Those rules were approved and applied in *Seymour v. Gillespie*, 608 S.W.2d 897 (Tex. 1980). Even though *Cummings* and *Seymour* are cases which involved attempted impeachment of a witness (or a party), there is no logical reason why the same rules should not be applicable to a tape recording of a dialogue between a child and the mother of the child in a child custody proceeding.

There was no showing that the statements of the child were voluntarily elicited without any form of inducement. Further, there was no showing that changes, additions, or deletions in the tape had not been made. At numerous times during the making of the tape, the recording device was turned off and on. For example, the tape indicates that the recording device was turned on at a time when the child was crying hysterically, but the statements or events causing this reaction were omitted from the recording. The tape contained statements which were inaudible. The tape is replete with unsworn testimony of both P. H. and the child.

Copies of the originals of the two video tapes were offered in evidence by the attorney ad litem. Counsel for E. H., among other objections thereto, objected on the ground that the requirements under "*Cummings v. Edwards*, 445 S.W.2d 767," had not been met in that there had been no showing that "the testimony [of the child] was elicited freely and voluntarily without any kind

of duress, and I say that because the tapes themselves will indicate that doctor [Gonik] is suggesting answers to the child on numerous occasions and, in effect, leading the child into answering leading questions." The trial court overruled the objections and instructed the jury that the video tapes were not being admitted "for the truth of anything the child says, but only so that you may see what evidence the doctor had and some of the things that he used to reach his evaluation."

Dr. Gonik prepared the originals of the video tapes; after viewing the duplicate copies of the originals, he stated, in substance, that they were identical with the originals and no alterations, deletions or changes had been made. He further testified that they were made by him during therapy sessions with the child "to further study some information that I felt relevant to what was going on with [T. L. H.] at the time." The tapes were not made in conjunction with, or a part of, any trial or courtroom proceedings.

The same rules announced by this Court in *Cummings*, supra, apply to the admissibility of video tapes which record the statements of a child in a custody proceeding where the child's custody is in issue. As already noted, the child did not testify. The mother; the father; Dr. Gonik, the child's psychologist; and many other persons testified at length.

The requirement in *Cummings*, supra, that "a showing that the testimony elicited was voluntarily made without any kind of inducement" was not met in the case at bar. This is definitely established by Dr. Gonik, when he said: "I went to some lengths to stress the child." P. H. argues that this was merely a "technique" and "method of treatment" used by Dr. Gonik. The fact is that this "technique" was a species of inducement for much of what the child said.

P. H. was present with the child throughout most of the recording of the first tape. Her presence obviously influenced the child and acted as an inducement for some of the statements made by her. The tapes, under the circumstances shown by the record, were inadmissible under the rules laid down in *Cummings*, supra, and approved by the Supreme Court in *Seymour*, supra.

Another fundamental problem with the tape recording and the video tapes is that E. H. did not have an opportunity to cross-examine the child concerning the statements she made in the recordings at the time she made them. Under the circumstances in this case, despite P. H.'s arguments in her brief that the tapes were offered only to show a state of mind, the child, in effect, gave unsworn testimony to the jury, which went untested by cross-examination.

When a proper predicate is laid and fundamental problems are not present, the trial court can, in its discretion, admit into evidence tape recordings and video tapes. See *In Re Bates*, 555 S.W.2d 420, 423 (Tex. 1977); *Drake v. State*, 488 S.W.2d 534, 538 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.). In this case, however, a proper predicate was not laid for the admission of either the tape recordings or the video tapes in evidence, and the child, in effect, gave unsworn testimony to the jury about her father and paternal grandmother which was untested by cross-examination by the father. The admission of the tapes in evidence constituted reversible error. Moreover, when all of the record is examined, we conclude that the trial court abused its discretion in admitting the tapes into evidence. Points of error 28, 29, 31 and 32 are sustained.

### Attorney's Fees

E. H. also contends that the trial court erred in rendering judgment against him "for payment of [P. H.'s] attorney's fees." The award of attorney's fees included compensation for legal services furnished P. H. in defending the action brought by E. H. to modify the existing custodial order of the child *and* compensation for legal services rendered her in prosecuting her action to terminate the parental rights of E. H.

Section 11.18(a) of the Texas Family Code as it existed at the time judgment was

rendered in this case (March 17, 1981), provided:

"In any proceeding under this subtitle, the court may award costs as in other civil cases. Reasonable attorney's fees may be taxed as costs, and may be ordered paid directly to the attorney, who may enforce the order for fees in his own name."

Rule 131, T.R.C.P., provides:

"The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."

For purposes of the above-quoted rule, a "successful party" is a party "who obtains a judgment of a competent court vindicating a claim of right, civil in nature." *Siepert v. Brewer*, 433 S.W.2d 773, 775 (Tex.Civ.App. —Texarkana 1968, writ ref'd n. r. e.). See also *Lovato v. Ranger Ins. Co.*, 597 S.W.2d 34 (Tex.Civ.App.—Amarillo 1980, writ ref'd n. r. e.).

When Section 11.18(a) of the Texas Family Code and Rule 131, T.R.C.P., are considered together, the successful party, in cases similar to the case now before this Court, is entitled to recover reasonable attorney's fees from the unsuccessful party, absent good cause for adjudging costs as permitted by Rule 141, T.R.C.P. In this case, P. H. is entitled to recover attorney's fees from E. H. only in the event she is the successful party through the appeal. The issue is complicated by the fact that while P. H. was the successful party in the trial court in both the action brought by E. H. to modify the child custody order and in the action brought by her to terminate E. H.'s parental rights, she is the successful party in this Court only with respect to the suit to modify the custody order. Therefore, P. H. is entitled to attorney's fees only for legal services incurred in defending the suit to modify the original child custody order, wherein she was the successful party in both the trial court and in this Court; she is not entitled to attorney's fees from E. H. for prosecution of her action to terminate E. H.'s parental rights, since she, although the successful party in the trial court, is the unsuccessful party in this Court. See *Reames v. Reames*, 604 S.W.2d 335 (Tex. Civ.App.—Dallas 1980, no writ).

Even though we affirm that portion of the judgment which instructed a verdict against E. H. on his motion to modify and denied E. H.'s motion, the record will not permit us to affirm any part of the award of $25,000.00 as compensation for legal services furnished P. H. in defending the action brought by E. H. There is ample evidence, based on the hourly rate shown by the record, to sustain the full account of the award for legal services furnished in *the entire case*. However, the record does not show the number of hours spent by the attorney for P. H. in defending against the action to modify, nor does it reveal the number of hours devoted by the attorney in the prosecution of the action to terminate the parental rights.

Under these circumstances, the issue of the amount of attorney's fees to be paid P. H.'s attorney is severed from the remainder of the case. *McDonald v. Savoy*, 501 S.W.2d 400 (Tex.Civ.App.—San Antonio 1973, no writ). Since the award of attorney's fees is in a single sum of money, and as P. H. was the successful party as to part of the lawsuit, but was the unsuccessful party as to the remaining part, the portion of the judgment which awarded attorney's fees to the attorney for P. H. must be reversed and the matter of attorney's fees must be remanded to the trial court for the purposes of determining the amount of money which will constitute reasonable attorney's fees in defending against the action brought by E. H. to modify the original child custody order. *Espinoza v. Victoria Bank & Trust Co.*, 572 S.W.2d 816 (Tex.Civ. App.—Corpus Christi 1978, writ ref'd n. r. e.).

That portion of the judgment which instructed a verdict against E. H. on his motion to modify the original child custody order and "denied" such motion is affirmed. Those portions of the judgment which terminated E. H.'s parental rights and the awards of attorney's fees to be paid P. H.'s attorney are reversed and remanded to the trial court.

E. H. complains of numerous other alleged errors of the trial court. In view of what we have already said, it is unnecessary to address his other points of error.

Costs of this appeal are taxed 50% to E. H. and 50% to P. H. See Rule 448, T.R.C.P., *Pundt v. McNeill*, 502 S.W.2d 904 (Tex.Civ. App.—Corpus Christi 1973, no writ).

AFFIRMED IN PART and REVERSED AND REMANDED IN PART.