822 S.W.2d 103 (1991)
In the Matter of B.R., J.L.R., D.R., R.R., C.R., and LJ.R., Children.
No. 12-90-00243-CV.
Court of Appeals of Texas, Tyler.
October 18, 1991.
Opinion on Rehearing February 11, 1992.
*104 Mary Lou Tevebaugh, Longview, for appellant.
Janie Johnson, Longview, for appellee.
COLLEY, Justice.
On June 20, 1990, following a bench trial, the court signed a judgment terminating the parent-child relationship between appellant Mary Rogers and her six children,[1] identified by initials in the caption.
The Texas Department of Human Services (hereinafter "DHS"), by its live pleadings sought termination of parental rights over the children under Tex.Fam.Code Ann. § 15.02(1)(D) and (E)(Vernon Supp.1991) (hereinafter "Section 15.02(1)(D) and (E)"). As requested by appellant, the trial court made separate findings of fact and conclusions of law which are a part of this record. However, the trial court's findings of facts contain no express finding that the appellant "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the [children]." See Section 15.02(1)(E).
Although the judgment operates to terminate the parental rights of appellant and her husband, Leonard Rogers, only appellant has sought review of that judgment.
Appellant, in her points of error one through four, challenges the factual and legal sufficiency of the evidence to support the trial court's finding of facts numbers 10 through 17. (First Issue) By her points of error numbers five and six, appellant challenges the factual and legal sufficiency of the evidence to support the trial court's finding of fact number 18. (Second Issue). We will overrule these points of error and affirm the judgment.
Appellant, under her First Issue, argues that the termination can only be upheld by findings of fact bearing on the grounds for termination provided by section 15.02(1)(D). She contends, in this regard, that there is "no evidence that the environment of the children endangered their physical or emotional well-being." She points out that there "are no findings concerning the suitability, or lack thereof, of the children's environment." (See Appellant's Brief at 11, *105 12.) (Emphasis ours.) In so contending, the appellant relies on such cases as In the Interest of A.C. and L.C., 758 S.W.2d 390 (Tex.App.Fort Worth 1988, no writ); G.M. v. Texas Department of Human Resources, 111 S.W.2d 185 (Tex.App.Austin 1986, no writ); and Stuart v. Tarrant County Child Welfare Unit, 677 S.W.2d 273 (Tex.App.Fort Worth 1984, writ ref'd n.r.e.).
The rule announced in Stuart, In the Interest of A.C. and L.C., and G.M., as expressed in G.M. is that:
Termination under [section 15.02(1)(D)] requires proof that [a terminated parent] left [the child] in a physical environment which was dangerous to the child's physical or emotional well-being. The subsection refers only to the acceptability of the child's living conditions, and does not concern the conduct of the parents toward the child.

G.M., 111 S.W.2d at 187-188 (citations omitted, emphasis added).
This rule apparently had its genesis in In the Interest of T.L.H., 630 S.W.2d 441, 445-446 (Tex.App.Corpus Christi 1982, writ dism'd), wherein the court ultimately concluded, "that subsection D can be utilized as a ground for termination ... only if there is clear and convincing evidence that the child was placed in conditions or surroundings dangerous to his or her physical or emotional well-being; parental conduct alone is insufficient under subsection D." Id. (emphasis in original).
A close reading of G.M. shows that the appellee, the Texas Department of Human Services, attempting to uphold a termination judgment, argued that the evidence was sufficient for that purpose because it revealed that appellant allowed the children to "remain" in foster care in a home selected by appellee, thereby leaving the child "in an environment which endangered the child's well-being." G.M., 111 S.W.2d at 188. According to a case worker witness in that case, the "negative effect[s]" of that placement included the "temporary nature" of the home and the "unclear roles of the foster parents." Id. The Austin court correctly rejected that argument and found the evidence to be legally insufficient to support termination under section 15.-02(1)(D).
The Fort Worth Court of Appeals in the case of In the Interest of A.C. and L.C., was confronted with a "no evidence" challenge regarding the trial judge's findings (incorporated into the judgment) that grounds for termination existed under sections (1)(D) and (E). After finding that "there is some evidence to prove a violation of section 15.02(1)(E)" the court, by way of dicta, went on to say that there was "no evidence of a violation of [subsection] (D)" because that subsection "goes to the environment that the child is in." Id. at 393. After that, the court proceeded to explain the last quoted language by observing that "[t]here is no evidence here that the child's environment (as opposed to the conduct of [the child's] half-brother) endangered [the child's] physical or emotional well-being." Id.
On the other hand, the Amarillo Court of Appeals in a case styled, In the Interest of L.S., P.P., G.S. and M.S., 748 S.W.2d 571 (Tex.App.Amarillo 1988, no writ), found evidence that appellant's live-in boyfriends had repeatedly committed sexual abuse of appellant's four daughters and that appellant had knowledge of such abuse but allowed the children to remain in her home with the abuser, was legally and factually sufficient to sustain a jury finding under section 15.02(1)(D). Id. at 575.
In Smith v. Sims, 801 S.W.2d 247, 251 (Tex.AppHouston [14th Dist] 1990, no writ), the court, in construing section 15.-02(1)(D), held that when the evidence shows that the children are subjected to a "potentially violent confrontation" (there, a SWAT Team) then that establishes "a dangerous environment" sufficient of itself "to satisfy the requirements of 15.02(1)(D)." Id.
We perceive no sound reason to judicially impose restrictions on the meaning of the plain language of section 15.02(1)(D). That statute reads:
A petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:
(1) the parent has:
* * * * * *
*106 (D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangers the physical or emotional wellbeing of the child;
....
(Emphasis added.)
It is illogical to reason that inappropriate, debauching, unlawful, or unnatural conduct of persons who live in the home of a child, or with whom a child is compelled to associate on a regular basis in his home, are not inherently a part of the "conditions and surroundings" of that place or home under section 15.02(1)(D). The provisions of that statute are manifestly designed to protect children against just such an environment.
Therefore, we respectfully decline to follow the rule laid down in G.M., In the Interest of A. C, and in Stuart, but join with our brethren on the Amarillo Court and the Houston 14th Court in their conclusions that abusive or violent conduct by a parent or other resident of a child's home can produce an environment that endangers the physical or emotional well-being of a child within the ambit of section 15.-02(1)(D). See also Ziegler v. Tarrant County Child Welfare Unit, 680 S.W.2d 674, 678-679 (Tex.App.Fort Worth 1984, writ ref'd n.r.e.). Consequently, we reject appellant's argument to the contrary, and her argument that a "strict construction" of section 15.02(1)(D) and (E) calls for a construction of those subsections different from the construction we have rendered here. We respect the declarations in Holick v. Smith, 685 S.W.2d 18, 20-21 (Tex. 1985), that involuntary termination of parental rights implicates grave constitutional issues; however, the rule of "strict construction" does not require a court to ignore the plain meaning of the statute under consideration.
We now move on to a discussion of the evidence in this case. In so doing, we acknowledge the standard of proof that the evidence offered to support termination of parental rights must be clear and convincing before a court may terminate parental rights. Holick v. Smith, 685 S.W.2d at 20. Furthermore, in reviewing the evidence, we will apply the appropriate standard of review prescribed for "no evidence" and "insufficient evidence" points. See In re King's Estate, 150 Tex. 662, 244 S.W.2d 660 (1951), and Garza v. Alviar, 395 S.W.2d 821 (Tex. 1965). The testimony in this case, together with the contents of that certain "Court Report for Review" dated May 3, 1990, constitutes clear and convincing evidence which, in our opinion, is legally and factually sufficient to support the trial court's finding of facts numbers 17 and 18. The record reveals that appellant and her husband, Leonard Rogers, were the parents of six children. During the testimony of Renee Smith, a Child Protective Services Specialist III (employee of DHS), a document authored by the witness, designated "Court Report for Review," was introduced into evidence by DHS over appellant's objection that the report contained hearsay. The actual objection was: "I would make objections to the hearsay portion of the report, other than that, I would have no objection." The court overruled that objection, and we think correctly so, because the objection is non-specific and therefore insufficient. Moreover, appellant makes no complaint of that ruling in this Court. Hence, we will consider the contents of the report as competent evidence properly before the court, to be treated in accord with Tex.R.Civ.Evid. 802 and 803(6).
Suffice it to say that this record shows that several of the children were sexually abused by their father, Leonard Rogers, and that abuse was properly reported and documented. It is undisputed[2] that the father's sexual abuse of his children began with his abuse of B.R. in 1981. The children at the time of the trial, ranged in age from 17 years (B.R.) to 7 years (L.J.R.). On October 3, 1988, the two oldest children, B.R. and J.L.R., were placed in the temporary managing conservatorship of DHS, removed from appellants' home, and placed with relatives. On January 17, 1989, DHS *107 was appointed temporary managing conservator of the remaining children. Those children were then taken into the possession of DHS. Shortly thereafter, appellant and these four children became residents of a shelter for abused families in Longview; however, appellant and her four children thereafter returned to their own home. At that particular point in time, the father was not living with them. On April 11, 1989, appellant telephoned DHS and requested that these four children be placed in foster care because she had been evicted from her apartment. DHS complied with the request, and the four younger children were placed in foster care homes at that time. In the interim, appellant had resumed her relationship and association with her husband. The evidence shows that she moved out twice but each time returned to consort with him again. According to the testimony of Renee Smith, appellant and her husband were not residing in Longview at the time of the trial, and were, perhaps, living in the State of Arkansas.
C.R., a female child revealed that she was sexually abused by her father in 1989, and at that time the appellant was advised of the abuse, but refused to believe that her husband had sexually abused the child C.R. It is undisputed that neither appellant nor the father of the children exercised visitation rights with any of the children after October of 1989.
After our careful review of this record, we are persuaded that clear and convincing evidence exists that is both legally and factually sufficient to support the finding of facts numbers 17 and 18.[3] We also conclude that neither finding is so contrary to the overwhelming weight and preponderance of the clear and convincing evidence as to be manifestly wrong or unjust. We overrule appellant's points of error and affirm the judgment.

OPINION ON REHEARING
Appellant asks us to follow the opinion of In the Interest of A.C. and L.C., 758 S.W.2d 390 (Tex.App.-Fort Worth 1988, no writ); we still find it illogical and decline to follow it.
Further, appellant urges us to reconsider her no evidence point in light of our interpretation of Tex.Fam.Code Ann. § 15.02(1) (Vernon Supp.1991). We find there is legally and factually sufficient evidence that the appellant knew of sexual abuse of her children in October 1988 when the Department of Human Services was appointed temporary managing conservator of two of her children and she kept the remaining children in that environment until the State intervened in January 1989. Therefore, a finding that she knowingly placed or allowed her children to remain in conditions or surroundings that endangered them is supported by the record.
The appellant's motion for rehearing is overruled.
NOTES
[1] B.R., the oldest of the children has since become 18 years of age. Hence, these proceedings are moot as to her.
[2] Neither appellant nor her husband appeared personally at trial, and presented no evidence in opposition to the evidence of the petitioner.
[3] Finding of fact number 17 reads: "Respondent, Mary Rogers knowingly allowed the children to remain in conditions or surroundings which endangered their physical and emotional well-being." Finding of fact number 18 reads: "It is in the best interest of the children that the parent-child [relationship] ... between Respondent, Mary Rogers, and the children be terminated."