TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00320-CV







Alice Stoglin, Appellant


v.


Texas Department of Protective and Regulatory Services, Appellee





FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT

NO. 92-2068-CCL, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING





 Alice Stoglin appeals from a decree terminating her right to parent her child, F.S. We will
affirm the trial court's judgment.


BACKGROUND

 Stoglin is F.S.'s natural mother. Stoglin suffers from mild mental retardation; she also
suffered from drug and alcohol addiction during the times relevant to this proceeding. F.S. lived with
Stoglin and his maternal grandmother until May 9, 1992. Around 10:00 p.m. that night, the police found
seven-year-old F.S. wandering the streets, unable to find his way home. The police were not able to locate
any of his relatives. The Texas Department of Protective and Regulatory Services (the "Department"),
therefore, initiated emergency removal proceedings and subsequently became the temporary managing
conservator of F.S. 

 Since May 10, 1992, F.S. has lived in several different emergency shelters, foster homes,
and residential treatment centers as well as a group home. During this time, the Department and a volunteer
community organization attempted to help Stoglin visit F.S., gain parenting and life skills, and overcome her
drug and alcohol addictions. Unfortunately, Stoglin was either unable or unwilling to complete the
rehabilitative programs and she did not attend all her scheduled visits with F.S. 

 The Department eventually moved to terminate Stoglin's parental rights and the district
court conducted a hearing on the matter. F.S. was eleven years old at the time of the hearing. Based on
evidence presented at the hearing, the trial court found that Stoglin knowingly placed or knowingly allowed
F.S. to remain in conditions or surroundings that endangered his physical or emotional well-being. See Tex.
Fam. Code Ann. § 161.001(1)(D) (West 1996). The court also found termination of Stoglin's parental
rights was in F.S.'s best interest. See Tex. Fam. Code Ann. § 161.001(2) (West 1996). The court
expressly based its decree of termination on these findings. 


DISCUSSION

 Involuntary termination of parental rights is appropriate only when a court finds (1) one of
the enumerated criteria set out in the Family Code as grounds for termination are met, and (2) that
termination is in the best interest of the child. Tex. Fam. Code Ann. § 161.001(1), (2). The Department
bore the burden of proving the elements by clear and convincing evidence. See id.; In re G.M., 596
S.W.2d 846, 847 (Tex. 1980). 

 In two points of error, Stoglin attacks the legal and factual sufficiency of the evidence
supporting the judgment. We must decide, therefore, whether the evidence sufficiently supports the trial
court's finding that Stoglin knowingly placed or allowed F.S. to remain in an environment dangerous to his
physical or emotional well-being. If it does, we must then decide whether the evidence sufficiently supports
the trial court's finding that the termination was in F.S.'s best interest.

 In reviewing a challenge to the legal sufficiency, we must consider only the evidence and
inferences tending to support the finding and disregard all evidence to the contrary. Stafford v. Stafford,
726 S.W.2d 14, 16 (Tex. 1987). Then, in deciding whether the evidence is factually sufficient, we must
consider and weigh all the evidence and set aside the judgment only it if is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986). The clear and convincing standard of proof for terminating parental rights does not change the
standard of appellate review. D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex.
App.--Austin 1993, no writ).


Conditions or Surroundings

 In challenging the sufficiency of the evidence bearing on whether F.S.'s living conditions
or surroundings endangered him, Stoglin contends the court was confined to considering evidence relevant
only to F.S.'s physical living conditions. This Court, however, embraces the plain meaning of the statute,
which in addition to protecting a child from a dangerous physical environment, protects a child from another
person's conduct when that conduct renders the child's living environment unsafe. See D.O., 851 S.W.2d
at 354; see also In re B.R., 822 S.W.2d 103, 106 (Tex. App.--Tyler 1991, writ denied). 

 There is evidence supporting the conclusion that Stoglin knowingly allowed F.S. to remain
in an environment that endangered his emotional and physical well-being. Stoglin argues she left F.S. in the
care of her mother, a person capable of adequately caring for F.S. The fact that F.S. was found alone on
the street as a small child late at night when he was living with his grandmother suggests otherwise. Other
evidence suggests Stoglin had a long history of drug and alcohol addiction, which inhibited her ability to
parent and supervise F.S. properly and to understand his needs. According to several witnesses, Stoglin
had many opportunities to learn parenting skills but she was unable or unwilling to complete the training
programs. The record also contains evidence that Stoglin gave birth to two babies after F.S., and both
were born cocaine positive. One of the infants was born after the Department had taken custody of F.S. 
Furthermore, the evidence establishes that Stoglin was incarcerated for some period of time before the
termination hearing. Looking only at the evidence supporting the judgment, we hold a fact-finder could
reasonably infer that Stoglin's apparent inability to care for her children exposed F.S. to a physically and
emotionally dangerous environment. (1) Looking at the record overall, we recognize that Stoglin had good
basic caring and loving instincts, but the evidence of these instincts does not outweigh the evidence
suggesting her drug and alcohol addictions and mild mental infirmity precluded her from being able to
maintain a safe environment for F.S. We, therefore, overrule Stoglin's points of error insofar as they relate
to the finding that Stoglin created an environment that endangered F.S.'s physical or emotional well-being.


Best Interest of the Child

 Stoglin also challenges the finding that termination of her parental rights is in F.S.'s best
interest. See Tex. Fam. Code Ann. § 161.001(2). A number of factors may be considered when
evaluating a child's best interest. These include: (1) the desires of the child; (2) the emotional and physical
needs of the child; (3) the emotional and physical danger to the child; (4) the parental abilities of the parent;
(5) the programs available to assist the parent to promote the child's best interest; (6) the plans for the child
by the parent or the agency seeking custody; (7) the stability of the home or the proposed placement; (8)
acts or omissions of the parent that suggest the parent-child relationship is improper; and (9) any excuse
for the parent's acts or omissions. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).

 The record contains much evidence in support of the conclusion that it is in F.S.'s best
interest to terminate Stoglin's parental rights. There is evidence that F.S. was letting go of hope of
reunification with his mother because she was not overcoming her chemical dependency. F.S. told his
therapist he did not want to go home if the conditions did not change. The therapist noted F.S. had begun
to take an interest in adoption. According to at least one witness, F.S. suffered from attention deficit
hyperactivity disorder and had other personality characteristics that made it especially important for him
to be in a positive environment. Furthermore, as detailed above, the evidence shows F.S.'s home
environment was physically and emotionally dangerous to him, Stoglin was lacking in parenting skills, and
Stoglin was apparently unable to take advantage of the programs available to assist her. Finally, there is
evidence that F.S. was an adoptable child and that the Department had plans to place him in a positive
environment. F.S.'s guardian ad litem, caseworker, and therapist all had the opinion that termination of
Stoglin's parental rights was in F.S.'s best interest. The evidence detailed above is legally sufficient to
support the trial court's decision that termination of Stoglin's parental rights was in F.S.'s best interest.

 We are left with determining whether the evidence is factually sufficient to support the trial
court's judgment. There is some evidence suggesting the termination was not in F.S.'s best interest. For
example, F.S. apparently disliked living in the group home and did not want to stay there permanently. One
caseworker admitted that children of F.S.'s age and personality characteristics are generally not adopted
as quickly. More importantly, according to several witnesses, F.S. was upset by the prospect of losing all
contact with his extended family. In fact, at one point F.S. told someone his greatest wish was to go back
home. This evidence is powerful, especially in light of the fact that F.S. was eleven years old at the time
of the termination hearing and that he had developed lasting bonds with his extended family. We do not,
however, believe this evidence preponderates against the evidence supporting the court's judgment to the
extent that it renders the trial court's decision manifestly unjust. We, therefore, hold the evidence is
factually sufficient to support the trial court's judgment and overrule the remainder of Stoglin's points of
error.

 We note that an order terminating parental rights does not preclude the Department from
allowing the extended family reasonable access to the child, nor does it eliminate the possibility that the
extended family might apply to adopt F.S. See Tex. Fam. Code Ann. § 161.206(c), 162.001(a). We trust
the Department will consider the evidence concerning the likelihood of F.S.'s adoption and his strong desire
to maintain his relationship with his extended family when the Department plans for his future.


CONCLUSION

 After a careful review of the record, we conclude that the evidence is both legally and
factually sufficient to support the trial court's findings. We accordingly affirm the trial court's judgment.


 _____________________________________________

 Jimmy Carroll, Chief Justice

Before Chief Justice Carroll, Justices Aboussie and B.A. Smith

Affirmed

Filed: June 19, 1997

Do Not Publish
1. Cf. Trevino v. Dep't of Protective and Regulatory Servs., 893 S.W.2d 243, 251 (Tex.
App.--Austin 1995, no writ); In re J.J., 911 S.W.2d 437, 440 (Tex. App.--Texarkana 1995, writ
denied); Dupree v. Texas Dep't of Protective and Regulatory Servs., 907 S.W.2d 81, 84 (Tex.
App.--Dallas 1995, no writ).



R2">
Best Interest of the Child

 Stoglin also challenges the finding that termination of her parental rights is in F.S.'s best
interest. See Tex. Fam. Code Ann. § 161.001(2). A number of factors may be considered when
evaluating a child's best interest. These include: (1) the desires of the child; (2) the emotional and physical
needs of the child; (3) the emotional and physical danger to the child; (4) the parental abilities of the parent;
(5) the programs available to assist the parent to promote the child's best interest; (6) the plans for the child
by the parent or the agency seeking custody; (7) the stability of the home or the proposed placement; (8)
acts or omissions of the parent that suggest the parent-child relationship is improper; and (9) any excuse
for the parent's acts or omissions. See Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976).

 The record contains much evidence in support of the conclusion that it is in F.S.'s best
interest to terminate Stoglin's parental rights. There is evidence that F.S. was letting go of hope of
reunification with his mother because she was not overcoming her chemical dependency. F.S. told his
therapist he did not want to go home if the conditions did not change. The therapist noted F.S. had begun
to take an interest in adoption. According to at least one witness, F.S. suffered from attention deficit
hyperactivity disorder and had other personality characteristics that made it especially important for him
to be in a positive environment. Furthermore, as detailed above, the evidence shows F.S.'s home
environment was physically and emotionally dangerous to him, Stoglin was lacking in parenting skills, and
Stoglin was apparently unable to take advantage of the programs available to assist her. Finally, there is
evidence that F.S. was an adoptable child and that the Department had plans to place him in a positive
environment. F.S.'s guardian ad litem, caseworker, and therapist all had the opinion t