

# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-15-00054-CV

**IN THE INTEREST OF S.H.**, a Child

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2014-PA-00641
Honorable Charles E. Montemayor, Judge Presiding

Opinion by:  Jason Pulliam, Justice

Sitting:  Sandee Bryan Marion, Chief Justice
Rebeca C. Martinez, Justice
Jason Pulliam, Justice

Delivered and Filed:  July 1, 2015

AFFIRMED

Appellant R.G. appeals the trial court's judgment terminating her parental rights to her child S.H.[1]  We affirm the trial court's judgment.

### PROCEDURAL HISTORY

On March 6, 2014, the Department of Family and Protective Services ("the Department") received a referral alleging S.H. had been subjected to repeated sexual assault by her father.  The Department removed S.H. from her home on that day, pursuant to Texas Family Code Section 262.  At the time of removal, S.H.'s father had been incarcerated since January 2014 and was serving a

---

[1] To protect the identity of the minor child, we refer to the child and the child's parents by their initials.  *See* TEX. FAM. CODE ANN. § 109.002(d) (West 2014); TEX. R. APP. P. 9.8(b)(2).  Although the trial court terminated both parents' parental rights, because R.G. is the only parent to appeal the trial court's judgment, this court will only discuss this case as it pertains to R.G.

ten-year sentence in the federal judicial system; R.G. was incarcerated in Bexar County Jail for possession of a controlled substance, serving a two-year sentence. S.H. was living with her 20-year old sister Samantha and Samantha's 4-month old child.

The Department conducted an interview with S.H. and with Samantha on March 17, 2014, and filed a petition to terminate R.G.'s parental rights on March 18, 2014. Following an adversary hearing held on March 27, 2014, the trial court signed a temporary order assigning the Department as temporary managing conservator of S.H. and assigning the parents as temporary possessory conservators with no access, as both parents were incarcerated at the time.

The trial court held a status hearing on May 15, 2014, and permanency hearings on September 18, 2014, and January 8, 2015. R.G. was incarcerated throughout the case, but was presumably released prior to commencement of the trial.[2] The parties tried the case to the bench on January 15, 2015. R.G. was represented at trial, but was not present. S.H.'s father was represented at trial, but was not present because he was still incarcerated. After receipt of evidence and testimony, the trial court rendered judgment terminating R.G.'s parental rights, finding the following four statutory grounds for termination: (1) R.G. knowingly placed or allowed S.H. to remain in conditions or surroundings which endanger her physical or emotional well-being, pursuant to Texas Family Code Section 161.001(1)(D); (2) R.G. engaged in conduct or knowingly placed S.H. with persons who engaged in conduct which endanger her physical or emotional well-being, pursuant to Texas Family Code Section 161.001(1)(E); (3) R.G. constructively abandoned S.H., who was in possession of the Department for less than 6 months, and the Department made reasonable efforts to return S.H.; R.G. did not regularly visit or maintain significant contact with

---

[2] The attorneys present at the termination hearing stated they believed R.G. had been released from prison; however, she had not contacted her attorney or the Department's attorney, had not responded to messages left at her last known address, had not responded to summons served on her at the jail or otherwise indicated a desire to participate.

S.H.; and R.G. demonstrated an inability to provide S.H. with a safe environment, pursuant to Texas Family Code Section 161.001(1)(N); and (4) R.G. failed to comply with the provisions of a court order that specifically addressed the actions necessary to obtain the return of S.H., pursuant to Texas Family Code Section 161.001(1)(O). The trial court also found termination of R.G.'s parental rights is in the best interest of S.H., pursuant to Texas Family Code Section 161.001(2). R.G. perfected this appeal.

## ANALYSIS

On appeal, R.G. complains the evidence is legally and factually insufficient to support the trial court's findings of statutory grounds for termination of her parental rights pursuant to Texas Family Code Sections 161.001(1)(D), (E), (N) and (O), and the evidence is legally and factually insufficient to support the trial court's finding that termination is in the best interest of S.H. *See* TEX. FAM. CODE ANN. §§ 161.001(1)(D), (E), (N), (O), (2) (West 2014).

### Standard of Review

To support termination of parental rights under Family Code Section 161.001, the Department must establish by clear and convincing evidence one or more of the acts or omissions enumerated under subsection (1), **and** termination is in the best interest of the child. TEX. FAM. CODE ANN. §§ 161.001(1), (2); TEX. FAM. CODE ANN. § 161.206(a) (West 2014); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). Both elements must be established, and termination may not be based solely on the best interest of the child. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

A parent's right to the companionship, care, custody, and management of children is a constitutional interest "far more precious than any property right." *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985); *see also In re J.F.C.*, 96 S.W.3d at 273. Consequently, termination proceedings must be strictly scrutinized, and "involuntary termination statutes are strictly construed in favor of

the parent." *Holick*, 685 S.W.2d at 20. Because termination "is complete, final, irrevocable, and divests for all time that natural right ... the evidence in support of termination must be clear and convincing before a court may involuntarily terminate a parent's rights." *Id.*; *see In re J.F.C.*, 96 S.W.3d at 264–66. Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE ANN. § 101.007 (West 2014); *In re J.F.C.*, 96 S.W.3d at 264. This standard guards the constitutional interests implicated by termination, while retaining the deference an appellate court must have for the factfinder's role. *In re J.F.C.*, 96 S.W.3d at 265–66. An appellate court must not reweigh issues of witness credibility but "'must defer to the [factfinder's] determinations so long as those determinations are not themselves unreasonable.'" *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (quoting *Southwestern Bell Tel. Co. v. Garza*, 164 S.W.3d 607, 625 (Tex. 2004)).

Under the strict scrutiny implicit in termination cases and the necessity of clear and convincing evidence, the traditional legal and factual standards of review are inadequate. *In re J.F.C.*, 96 S.W.3d at 264–66. Instead, in conducting a legal sufficiency review in a termination-of-parental-rights case, an appellate court must view all of the evidence in the light most favorable to the finding and determine whether a reasonable factfinder could have formed a firm belief or conviction that its ultimate findings are true. *See id.* at 266. In viewing the evidence in the light most favorable to the judgment, the appellate court "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *Id.* If, after conducting its legal-sufficiency review of all the evidence, a court determines no reasonable factfinder could form a firm belief or conviction consistent with the final judgment,

then the court must conclude the evidence is legally insufficient. *In re J.F.C.*, 96 S.W.3d at 264–66.

In conducting a factual sufficiency review in a parental-rights termination case, the appellate court must review and consider the entire record, including evidence contrary to the judgment, and determine whether the disputed evidence is such that a reasonable fact finder could have formed a firm conviction or belief about the truth of the Department's allegations. *Id.* We assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id.* In reviewing factual sufficiency, we consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.*

**Statutory Grounds for Termination**

*Termination Based on Section 161.001(D)*: *Dangerous Conditions or Surroundings*

R.G. contends the evidence is legally and factually insufficient to support termination of her parental rights under subsection (D) because no evidence was presented to establish R.G. *knowingly* placed, or allowed S.H. to be placed, in conditions which endangered her physical or emotional well-being. R.G. argues that because she was incarcerated at the time of S.H.'s removal and had not had contact with S.H., the Department did not meet its burden of proving R.G. *knew* of the conditions in which S.H. lived.

Subsection D allows for termination of parental rights if the parent knowingly placed or allowed the child to remain in conditions or surroundings that endangered the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(1)(D). Under subsection (D), it is necessary to examine evidence related to the environment of the child to determine if the environment was the source of endangerment to the child's physical or emotional well-being. *In re M.C.T.*, 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.). An environment

produced by the parent's conduct may be the source of endangerment, although the parent's conduct does not necessarily have to be directed at the child nor is the child required to suffer injury. *Id.* In addition, to support a finding of endangerment, it is not necessary for the parent to have certain knowledge that an actual injury is occurring; the parent must only be aware of the potential for danger to the child in such environment and disregard that risk. *In re C.L.C.*, 119 S.W.3d 382, 392–93 (Tex. App.—Tyler 2003, no pet.); *In re N.R.*, 101 S.W.3d 771, 776 (Tex. App.—Texarkana 2003, no pet.). Moreover, abusive, violent, illegal or inappropriate conduct by a parent or other resident of a child's home, or with whom a child is compelled to associate on a regular basis, inherently produce an environment that endangers the physical or emotional well-being of a child. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied). "As a general rule, conduct that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child." *In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied); *see In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied). Thus, while incarceration alone does not justify termination, a parent's repeated criminal acts may constitute sufficient evidence of conduct that endangers the well-being of a child. *See Boyd*, 727 S.W.2d at 533; *In re S.D.*, 980 S.W.2d at 763. Further, a factfinder may infer from past conduct endangering the well-being of a child that similar conduct will recur if the child is returned to the parent. *See In re D.L.N.*, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, no pet.).

### The Evidence

To establish basis for termination, the Department relied upon the testimony of two witnesses: S.H.'s caseworker Jennifer Ireugas and Katrina Moore, S.H.'s representative from CASA. R.G.'s attorney cross examined these witnesses; however, R.G. presented no witnesses to testify on her behalf.

The record reflects R.G. was served with notice of the trial setting and was aware of the process to contact Ms. Ireugas; however, R.G. made no contact and did not return letters sent to her while she was incarcerated and sent to her last known address. Through Ms. Ireugas's testimony, the Department established that at the time of S.H.'s removal, S.H.'s father was incarcerated; R.G. was incarcerated and serving a two-year sentence due to conviction for possession of a controlled substance; R.G. remained incarcerated throughout adjudication of the case, but was presumably released prior to commencement of the trial; R.G. did not attempt to contact Ms. Ireugas while incarcerated to ensure S.H.'s safety or to provide names of relatives who could provide care for her; and R.G. did not contact Ms. Ireugas after her release from incarceration to inquire about obtaining custody or visitation of S.H. Ms. Ireugas testified C.P.S. records indicated S.H.'s father had raped other children in his custody and was a known drug dealer; R.G. was an admitted heroin addict, had previous arrests for drug possession and tested positive for heroin at the time of S.H.'s birth; and the Department received previous referrals pertaining to S.H. while she was in R.G.'s possession. Ireugas testified S.H. stated she witnessed her father with drugs, which he would hide when police came to the house; her father repeatedly sexually abused her prior to his incarceration; and she did not feel safe returning to a home with her mother or her sister. Ireugas testified the conditions in which S.H. lived prior to her removal and placement with the Department were dangerous to her emotional and physical well-being, and S.H. was happy and thriving in her current placement through the Department.

We have thoroughly reviewed the evidence in this case. After review of all the evidence in the light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction S.H. should be removed from R.G. because R.G. knowingly placed or knowingly allowed S.H. to remain in conditions which endangered S.H.'s physical or emotional well-being. The evidence presented reveals, although incarcerated, R.G.

allowed S.H. to remain in a home where illegal and violent conduct occurred. This conduct occurred before R.G.'s incarceration and, based upon her heroin use, was, in part, due to R.G.'s direct conduct. This evidence is sufficient to show R.G. was aware of the potential for danger to S.H. in such environment and disregarded that risk. Finally, R.G.'s repeated criminal conduct and absence from S.H's life creates an inference similar conduct will recur if S.H. is returned to R.G. The evidence is, thus, legally sufficient to support the trial court's termination findings under Family Code Section 161.001(1)(D).

Moreover, considering the entire record, a factfinder could reasonably form a firm conviction or belief that R.G. violated Family Code Section 161.001(1)(D). The evidence was not disputed. Consequently, based upon the same evidence and conclusions, the evidence is also factually sufficient to support the trial court's termination findings under Family Code Section 161.001(1)(D).

We hold the evidence is legally and factually sufficient to support the trial court's finding that termination of R.G.'s parental rights to S.H. was warranted pursuant to Section 161.001(1)(D). Thus, we overrule R.G.'s appellate issue with regard to this finding. Having overruled R.G.'s issue with regard to the trial court's findings under Section 161.001(1)(D), we need not address R.G.'s challenge to the trial court's findings under Family Code Sections 161.001(1)(E), (N) or (O). *See In re T.T.*, 228 S.W.3d 312, 326 n. 8 (Tex. App.—Houston [14th Dist.] 2007, pet. denied).

**Best Interest of the Child**

R.G. next challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination is in the best interest of S.H. R.G. argues only that "[i]t is not in the best interest of the child to terminate [her] parental rights," and, in this case, argues only that the Department "made NO effort to attempt reasonable services or tasks to reunite [R.G.] with her child." R.G. offers no supportive argument nor does she discuss the evidence, or lack thereof, with

respect to the trial court's finding with regard to this element. Thus, it appears R.G. argues she is automatically entitled to return of S.H. based upon the presumption in favor of maintaining the parental relationship.

When considering the best interest of the child, we recognize the existence of a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, we also presume that prompt and permanent placement of the child in a safe environment is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (West 2014). In determining the best interest of the child, the court may consider the following factors: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002). "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dept. of Protective & Regulatory Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Further, the same evidence proving acts or omissions under Family Code Section 161.001(1) may be also probative of best interest of the child. *In re C.H.*, 89 S.W.3d at 28. A

factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent. *In re B.K.D.*, 131 S.W.3d 10, 17 (Tex. App.—Fort Worth 2004, pet. denied).

Turning to the evidence regarding the best interest of the child, we consider the *Holley* factors as outlined above:

### *Desires of the Child*

As to the first factor, S.H.'s desire for placement, the evidence weighs in favor of the trial court's finding. S.H.'s caseworker Jennifer Ireugas, testified the Department began its involvement after an outcry allegation from S.H. that her father had sexually assaulted her, and S.H. expressed the sexual abuse had occurred for years, even when she lived with R.G. Ireugas testified S.H. expressed she does not have a relationship with R.G., and she is angry with R.G. for not helping her or protecting her from the sexual abuse; S.H. stated she was often left home alone while in the care of her sister; she was in favor of termination of R.G.'s parental rights, and she was ready to move forward with her life in the Department's care. Finally, Ireugas stated S.H. expressed she did not feel safe returning to her mother's care.

### *Physical and Emotional Needs*

With regard to the second factor, S.H.'s emotional and physical needs now and in the future, the evidence presented revealed S.H. is thriving in her present placement and prefers to stay. S.H. revealed she does not have a relationship with her mother, and her mother failed to protect her in the past. Ireugas testified R.G. has an admitted history of heroin addiction, she tested positive for heroin at the time of S.H.'s birth, and has been arrested previously for drug possession while caring for S.H. Ireugas testified R.G.'s parental rights have been terminated previously on a different child, and the CPS records indicate past allegations of sexual abuse committed by S.H.'s father had been validated. Based upon this testimony, and in light of R.G.'s historic inability to

meet S.H.'s physical and emotional needs due to her drug use and incarcerations, inference can be made R.G. will not be able to meet S.H.'s physical and emotional needs in the future. *See In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet).

### *Emotional and Physical Danger*

As to the third factor, the emotional and physical danger to S.H. now and in the future, the evidence revealed there is risk of emotional and physical danger to S.H. should she be placed in the care of R.G. As stated previously, the evidence presented reveals, although incarcerated, R.G. allowed S.H. to remain in a home where illegal and violent conduct occurred. This conduct occurred before R.G.'s incarceration and, based upon her heroin use, was, in part, due to R.G.'s direct conduct. This evidence is sufficient to show R.G. was aware of the potential for danger to S.H. in such environment and disregarded that risk. Finally, R.G.'s repeated criminal conduct and absence from S.H's life creates an inference similar conduct will recur if S.H. is returned to R.G. Ireugas testified the relationship between S.H., R.G., and S.H's father is toxic. Ireugas also testified there is nothing healthy or beneficial in maintaining the legal relationship with R.G. or S.H.'s father. More importantly, Ireugas testified that termination can help S.H move forward with her life.

### *Parental Abilities*

Regarding the fourth factor, parental abilities, the evidence again reflected R.G. had a history of inadequate caring for S.H., and the trial court could take this conduct into account in evaluating R.G.'s parental abilities. Further, the testimony revealed R.G. had been notified of the hearing, but did not appear. R.G.'s attorney stated he had not been able to contact R.G. or speak with her prior to the hearing. R.G. did not provide any updated contact information since her release from incarceration, nor did she contact the Department or her attorney to express any desire to see or gain custody or possession of S.H.

*Stability of the Home*

Regarding the seventh factor, stability of the home, the record reveals there was no stable home in which to place S.H. other than the institution provided by the Department. As stated previously, the testimony revealed R.G. has a history of heroin addiction and has previous incarcerations. The evidence did not reveal R.G. or S.H.'s sister, Samantha, expressed any desire to provide a home for S.H. In any event, the evidence presented revealed Samantha's home was not a safe environment, as S.H. expressed Samantha used drugs in the home, left S.H. alone in the home, and took S.H. with her to use drugs. Again, in light of R.G.'s historic drug use and inability to provide a stable home to S.H., an inference can be made that R.G. will be unable to meet this need in the future.

After determination and weight of the *Holley* factors and viewing the evidence in the light most favorable to the finding, we conclude the trial court could reasonably have formed a firm conviction that termination of R.G.'s parental rights is in S.H.'s best interest. Thus, the evidence is legally insufficient to support this finding. Moreover, because the evidence was not disputed, based upon the same evidence and conclusions, the evidence is also factually sufficient to support the trial court's finding that termination was in S.H.'s best interest.

Therefore, we conclude the evidence is legally and factually sufficient to support the trial court's finding that termination was in the best interest of S.H.

## CONCLUSION

Based on the foregoing reasons, we overrule R.G.'s points of issue in which she challenges the legal and factual sufficiency of the evidence to support the trial court's finding that termination of her parental rights was warranted under Texas Family Code Sections 161.001(1)(D), (E), (N) and (O) and termination was in the best interest of S.H. We affirm the trial court's judgment as to

R.G.  No costs shall be assessed against R.G. in relation to this appeal because she qualifies as indigent.

Jason Pulliam, Justice