

## Fourth Court of Appeals
### San Antonio, Texas

### MEMORANDUM OPINION

No. 04-25-00613-CV

**IN THE INTEREST OF C.R.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2024-PA-00261
Honorable Raul Perales, Associate Judge Presiding

Opinion by:  Rebeca C. Martinez, Chief Justice

Sitting:  Rebeca C. Martinez, Chief Justice
Lori Massey Brissette, Justice
H. Todd McCray, Justice

Delivered and Filed: February 25, 2026

AFFIRMED

This is an accelerated appeal from an order terminating the parental rights of appellant, J.R. ("Mother"), to her daughter, C.R.  Mother challenges the sufficiency of the evidence to support the trial court's findings that: (1) she committed the predicate acts required for termination, and (2) termination was in C.R.'s best interest.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)–(E), (b)(2).  We affirm.

### I. BACKGROUND

On February 16, 2024, the Texas Department of Family and Protective Services ("the Department") filed a petition for protection, conservatorship, and termination of Mother's parental rights to her daughter, C.R., who was two years old at the time.  According to an affidavit in

support of removal that accompanied the Department's petition, C.R. required specialized care and a liver transplant due to end-stage liver failure. C.R. was on a liver transplant list, but she was removed due to concerns about Mother's ability to care for her post-transplant. The Department sought removal of C.R. because Mother's inability to care for her medical needs, including Mother's failure to maintain a sterile environment. On that same day, the trial court signed an emergency order appointing the Department as temporary sole managing conservator and set a hearing for February 27, 2024. After the February 27 hearing, the trial court signed another order, retaining the Department as temporary managing conservator.

In 2025, the trial court conducted a three-day bench trial on the Department's request for termination of parental rights. The court considered testimony from nine witnesses: (1) Jannet Salazar, Department investigation supervisor; (2) Kimberly Unger, Child Advocates San Antonio supervisor; (3) C.R.'s foster mother; (4) Mittal Naveen, M.D., pediatric hepatologist, gastroenterologist, and medical director of the pediatric liver transplant program at the University Hospital System in San Antonio; (5) Sierra Marcee, nurse manager at University Hospital; (6) Irma Ayrosa Guardiola, assistant director of the pediatric transplant program at University Hospital; (7) Christina Marie Gracia, CPS therapist assigned to Mother; (8) Carol Ann Saldana, C.R.'s caseworker at the Department; and (9) Mother.

At the conclusion of trial, the trial court found by clear and convincing evidence that: (1) Mother knowingly placed or allowed C.R. to remain in conditions or surroundings which endanger the physical or emotional well-being of the child (subsection (1)(D) endangerment by conditions or surroundings); (2) Mother engaged in conduct or knowingly placed C.R. with persons who engaged in conduct which endangers the physical or emotional well-being of C.R. (subsection (1)(E) endangerment by conduct); and (3) termination of Mother's parental rights is in the best

interest of C.R. (subsection (2) best interest). *See id*. The trial court signed an order that terminated Mother's parental rights and appointed the Department as C.R.'s permanent managing conservator.

Mother timely appeals from the termination order.[1]

## II. DISCUSSION

### A.     Standard of Review

A parent-child relationship may be terminated, pursuant to section 161.001 of the Texas Family Code, only if the trial court finds by clear and convincing evidence one of the predicate grounds enumerated in subsection (b)(1) and that termination is in a child's best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(1), (2). Clear and convincing evidence requires "proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

We review the legal and factual sufficiency of the evidence under the standards of review established by the Texas Supreme Court in *In re J.F.C.*, 96 S.W.3d 256, 266–67 (Tex. 2002). In reviewing the legal sufficiency of the evidence, we must "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. "[A] reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *Id.* In reviewing the factual sufficiency of the evidence, we "must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited

---

[1] The termination order also terminated the parental rights of an "alleged father" and an "unknown father." Neither has appealed, and they are not a party to this appeal.

in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## B.    Predicate Termination Grounds – Sections 161.001(1)(D) and (E)

In two issues, Mother argues the evidence is legally insufficient to support the trial court's findings that: (1) she knowingly placed or allowed C.R. to remain in conditions or surroundings which endanger the physical or emotional well-being of C.R. ; and (2) she engaged in conduct or knowingly placed C.R. with persons who engaged in conduct which endangers the physical or emotional well-being of C.R.  *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D)–(E).

Section 161.001(b)(1)(D) and (E) pertain to child endangerment.  *In re A.S.*, 261 S.W.3d 76, 83 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).  Endangerment means to expose to loss or injury, to jeopardize.  *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (per curiam); *see also In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996) (per curiam).  Under subsection (D), it is necessary to examine evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being.  *In Re D.T.*, 34 S.W.3d 625, 632 (Tex. App.—Fort Worth 2000, pet. denied).  Conduct of a parent in the home can create an environment that endangers the physical and emotional well-being of a child.  *In re W.S.*, 899 S.W.2d 772, 776 (Tex. App.—Fort Worth 1995, no writ).  Under subsection (E), the relevant inquiry is whether evidence exists that the endangerment of the child's emotional or physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act.  *In re R.D.*, 955 S.W.2d 364, 368 (Tex. App.—San Antonio 1997, pet. denied); *Dupree v. Tex. Dep't of Prot. & Regul. Servs.*, 907 S.W.2d 81, 83–84 (Tex. App.—Dallas 1995, no writ).  Additionally, termination under section 161.001(1)(E) must be based on more than a single act or omission; a voluntary, deliberate, and

conscious course of conduct by the parent is required. TEX. FAM. CODE ANN. § 161.001(1)(E); *In re K.M.M.*, 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.).

In evaluating endangerment under subsection (D), we consider the child's environment before the Department obtained custody of the child. *See In re J.R.,* 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.). Under subsection (E), however, courts may consider conduct both before and after the Department removed the child from the home. *See Avery v. State,* 963 S.W.2d 550, 553 (Tex. App.—Houston [1st Dist.] 1997, no writ) (considering persistence of endangering conduct up to time of trial); *In re A.R.M.,* No. 14-13-01039-CV, 2014 WL 1390285, at *7 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (mem. op.) (considering pattern of criminal behavior and imprisonment through trial). Because the evidence concerning these two statutory grounds for termination is interrelated, we consolidate our examination of it. *In re B.R.*, 822 S.W.2d 103, 106 (Tex. App.—Tyler 1991, writ denied) (recognizing the link between a parent's conduct and a child's conditions and surroundings). The record contains evidence of subsection (D) environmental endangerment and subsection (E) course of conduct endangerment of the physical or emotional well-being of the C.R.

The trial testimony showed that C.R. suffered from liver failure and would die if she did not receive a liver transplant. C.R.'s medical team testified that a clean environment is essential to C.R.'s lifelong medical care due to her permanent immunosuppression, which places her at constant risk of life-threatening infections. Because of the great risk, a transplant patient's medical team provides extensive education to the patient's caregiver before the transplant so the caregiver can "start practicing good hygiene" that will continue throughout the patient's life.

Before C.R.'s transplant, Mother failed to take C.R. to medical appointments, which caused Child Protective Services to get involved. After Mother failed to take C.R. to a critical

appointment with her nutritionist, the Department inspected the apartment provided to Mother and C.R. by the non-profit organization "Transplants for Children." Mother did not have to pay rent, and Transplants for Children helped with food, crisis support, and other kinds of assistance as needed. All Mother had to do to remain in the apartment was keep it clean; she was contractually bound to keep the apartment clean because families with immunocompromised children lived at the facility, and a nonsterile environment could be life threatening. Inspectors found spoiled food on the counters, dirty dishes "everywhere," trash on the floor, maggots on the trash bag, maggots inside of C.R.'s bottle, and urine and feces on the floors. The toilet was filthy, had not been flushed, and there were bugs in the shower. Mother and C.R. were evicted because of the condition of the home, and they became homeless. Mother admitted during her testimony that she had signed a contract to keep the apartment clean but did not do so.

Mother and C.R. were then provided housing at the Ronald McDonald House. Mother admitted during her testimony that she was provided with a letter indicating what she needed to do to keep the room clean. But Mother failed to do so, and inspectors found bodily fluids (urine or vomit) on the beds, food left in the room, personal clutter, moldy items (including C.R.'s stroller), and dirty or soiled surfaces, despite the availability of cleaning facilities and repeated instructions and support. Mother admitted during her testimony that she was evicted from the Ronald McDonald House because she did not keep the room clean and sanitary for C.R.

On October 16, 2024, after being placed back on the transplant list, C.R. received a lifesaving transplant. Because Mother lived with C.R. at the hospital post-transplant, the hospital provided Mother with in-depth education on the clean environment C.R. required. Despite knowing this, Mother kept C.R.'s room "very dirty," with spoiled food throughout the room and feces on the couch that Mother and C.R. slept on. Mother would not allow hospital staff to remove

old food trays from the room. Mother was informed of the harm bacteria from old food posed to C.R. and that unsanitary conditions could result in C.R.'s illness or death, but she still refused to allow hospital staff to remove it from the room. For C.R.'s sake, they were moved to a new, clean, hospital room, but the very next day, it was just as unclean as the old one. Mother was given several warnings for cleanliness of the hospital room but failed to make a change. Mother also failed to keep C.R. physically clean. Mother left the hospital daily, even though a second caregiver was not present. Mother did so despite being told "multiple times" that she could not leave for long durations without notifying hospital staff because arrangements had to be made for someone to care for C.R. Mother missed C.R.'s lab appointment because she failed to return to the hospital. When Mother returned to the hospital, she exposed C.R. to illness because she failed to wear the required protective gear when interacting with her.

The record shows a pattern of Mother placing C.R.'s health and life in jeopardy by failing to keep her environment clean, even after receiving education and support. "'Environment' refers to the acceptability of living conditions, as well as a parent's conduct in the home." *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id.* "[A] parent need not know for certain that the child is in an endangering environment; awareness of such a potential is sufficient." *In re R.S.-T.*, 522 S.W.3d 92, 109 (Tex. App.—San Antonio 2017, no pet.) (internal quotation omitted). Neglect of a child's physical needs "can be just as dangerous to the well-being of a child as direct physical abuse." *In re M.C.*, 917 S.W.2d at 270. And neglect of a child's medical needs endangers the child. *Smith v. Tex. Dep't of Fam. & Prot. Servs.*, No. 01-09-00173-CV, 2009 WL 4359267, at *7 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (mem. op.); *In re T.M.T*, No. 14-18-00442-CV, 2018 WL 6053667, at *11

(Tex. App.—Houston [14th Dist.] 2018, no pet.) (mem. op.). A clean environment is part of C.R.'s life-long medical care needs. A parent's failure to provide appropriate medical care for a child may constitute endangering conduct. *See In re H.M.O.L.*, No. 01-17-00775-CV, 2018 WL 1659981, at *13 (Tex. App.—Houston [1st Dist.] Apr. 6, 2018, pet. denied) (mem. op.).

Viewing all the evidence in the light most favorable to the trial court's judgment and recognizing that the factfinder is the sole arbiter of the witnesses' credibility and demeanor, we conclude a reasonable factfinder could have formed a firm belief or conviction that Mother "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child" and "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). Thus, the evidence is legally sufficient to support this finding. Further, after considering the entire record, including any disputed or contrary evidence, we conclude the evidence is factually sufficient to support the trial court's termination under subsections (D) and (E) of the Texas Family Code. Mother's first issue is overruled.

## C.    Best Interest Finding

Our best interest analysis is guided by consideration of the non-exhaustive factors set in *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976). These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the

existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley*, 544 S.W.2d at 371–72; *accord In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013). The foregoing factors are not exhaustive, and the absence of evidence regarding some of the factors does not preclude the fact finder from reasonably forming a strong conviction that termination is in a child's best interest, particularly if the evidence is undisputed that the parent-child relationship endangered the safety of the child. *See In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002).

Here, the evidence supports the trial court's endangerment findings, and Mother does not contest findings that she failed to provide a clean environment for C.R. Indeed, Mother admitted to failing to provide a clean environment. *See id.* at 28 (explaining that evidence that proves one or more statutory grounds for termination may be probative in proving termination is in a child's best interest).

Carol Saldana, C.R.'s caseworker, testified that Mother's service plan required her to complete a psychological evaluation; attend individual counseling; secure housing and employment; develop a support system; and demonstrate an understanding of C.R.'s medical needs. Other than completing the psychological evaluation and participating in therapy, Mother did not comply with her service plan. Mother's therapist would sometimes have "to go looking" for Mother. *See In re N.L.R.*, No. 04-23-01020-CV, 2024 WL 1184462, at *4 (Tex. App.—San Antonio Mar. 20, 2024, no pet.) (mem. op.). ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of h[er] child that [s]he does not have the ability to motivate h[er]self to seek out available resources needed now or in the future." (quoting *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied)).

Psychologist, Christina Gracia, Ph.D., worked with Mother to understand "protective parenting," and the level of care C.R. required as a transplant patient. Specifically, Mother's therapy sessions addressed what good judgment and decision making looked like for C.R., with the goal that Mother could, over time, create a healthy, happy, and safe home. Although Mother expressed at therapy that she understood what to do, her actions showed that she did not understand the severity of C.R.'s condition and required care. Mother continuously failed to keep C.R.'s environment clean. And when the team confronted Mother about her cleanliness, she made excuses rather than take accountability. After nine months of working with Mother, Dr. Gracia testified that she did not believe Mother understood that she needed to change her behavior in order to keep C.R. safe, or the consequences and severity of her actions. Dr. Gracia did not believe Mother had the capacity to meet C.R.'s needs, or that more therapy would help her get there. *See In re J.R.W.*, 2013 WL 507325 at *9 (Tex. App.—Houston [14th Dist.] Feb. 12, 2013, pet. denied) (mem. op.) (upholding best interest finding when evidence showed that parent was unfamiliar with child's medications and could not demonstrate an understanding of child's medical diagnosis).

After viewing all the evidence in the light most favorable to the best interest finding, we conclude that the trial court could have formed a firm belief or conviction that termination of Mother's parental rights was in C.R.'s best interest. *See In re J.F.C.*, 96 S.W.3d at 266. C.R.'s emotional and physical needs now and in the future, the emotional and physical danger to C.R. now and in the future, parental abilities, stability of the home, and acts or omissions which may indicate an improper parent-child relationship (the second, third, fourth, and seventh *Holley* factors), weigh in favor of termination. *See In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio Jul. 25, 2018, pet. denied) (mem. op.) ("Evidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that

termination is in the child's best interest — especially when the evidence shows the parental relationship endangered the child's safety."). We further conclude that any disputed evidence, viewed in light of the entire record, could have been reconciled in favor of the trial court's best-interest finding or was not so significant that the trial court could not reasonably have formed a firm belief or conviction that termination was in C.R.'s best interest. *See id*. Therefore, we hold the evidence is legally and factually sufficient to support the trial court's best-interest finding. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Mother's second issue is overruled.

### III. CONCLUSION

We affirm the trial court's parental termination order.

DO NOT PUBLISH

Rebeca C. Martinez, Chief Justice